# COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983

FILED
MAR 20 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

Name: _Verduzco_____ _Daniel_____
    (Last)                        (First)

Prisoner Number: _T-45537_____

Institutional Address: _CSP-Cor. ASU-1 Cell # 165, P.O. Box 3456_____
_Corcoran, California 93212_____

---

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

JSW

_Daniel Verduzco_____ )
(Enter your full name.) )
) Case No. CV 19 1440
vs. ) (Leave blank; to be provided by Clerk of Court)
)
_Mickey Price et. Al._____ ) **COMPLAINT UNDER THE**
) **CIVIL RIGHTS ACT,**
_____ ) **42 U.S.C. § 1983**
)
_____ )
)
_____ )
(Enter the full name(s) of the defendant(s) in this action.) )

## I. Exhaustion of Administrative Remedies.

**Note:** You must exhaust available administrative remedies before your claim can go forward. The court will dismiss any unexhausted claims.

A.    Place of present confinement _California State Prison - Corcoran_____

B.    Is there a grievance procedure in this institution?    YES ☑    NO ☐

C.    If so, did you present the facts in your complaint for review through the grievance

procedure?    YES ☑    NO ☐

D.    If your answer is YES, list the appeal number and the date and result of the appeal at each

level of review.  If you did not pursue any available level of appeal, explain why.

    1. Informal appeal: _Log # PBSP HC 17030151 filed March 24, 2017; Log # PBSP-HC-17030220_
_filed June 14, 2017; Log # PBSP HC 17030208 filed May 26, 2017; Log # PBSP-17-61058_
_filed May 26, 2017; Log # PBSP HC 17030207 filed May 26, 2017_____

COMPLAINT _Page 1 of 4_

1     2. First formal level: By Russell, PBSP.3-17-01058 Partially Granted 07/04/17 ; PBSP-HC- 17030151

2     Partially Granted 05/08/17 ; PBSP- HC- 17030220 Partially Granted 07/05/17 ; PPSP- HC- 17030208

3     Partially Granted 07/11/17 ; PBSP- HC- 17030207 Partially Granted Date Unknown ;

4     3. Second formal level: PBSP.3-17-01058 Partially Granted 09/18/17 ; PBSP- HC- 17030151 Partially

5     Granted 06/15/17 ; PBSP. HC- 17030220 Partially Granted 09/19/17 ; PBSP- HC- 17030208 Partially

6     Granted 06/08/17 ; PBSP- HC- 1703207 Partially Granted Date Unknown

7     4. Third formal level: PBSP.3-17-01058 Denied 01/08/18 ; PBSP- HC-17030151 No Modifications .

8     PBSP- HC- 17030220 No Modifications ; PBSP-H-C- 17030208 No Modifications ; PBSP- HC-

9     17030207 No Modifications .

10  **E.**  Is the last level to which you appealed the highest level of appeal available to you?

11       **YES** ☑  **NO** ☐

12  **F.**  If you did not present your claim for review through the grievance procedure, explain why.

13  _____

14  _____

15  _____

16  **II.  Parties.**

17  **A.**  Write your name and present address.  Do the same for additional plaintiffs, if any.

18  Daniel Verduzco , CDC # T-45537 , OSP_Cor - ASU-1  Cell #165

19  P.O. Box 3456

20  Corcoran, California 93212

21  **B.**  For each defendant, provide full name, official position and place of employment.

22  ( See Attached Complaint )

23  _____

24  _____

25  _____

26  _____

27  _____

28  _____

COMPLAINT *Page 2 of 4*

1

## III. Statement of Claim.

2
3
State briefly the facts of your case. Be sure to describe how each defendant is involved and to include dates, when possible. Do not give any legal arguments or cite any cases or statutes. If you have more than one claim, each claim should be set forth in a separate numbered paragraph.

4    See Attached Complaint

5

6

7

8

9

10

11

12

13

14

15

16

## IV. Relief.

17
18
Your complaint must include a request for specific relief.  State briefly exactly what you want the court to do for you. Do not make legal arguments and do not cite any cases or statutes.

19    See Attached Complaint

20

21

22

23

24    I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

25    Signed this 13 day of March , 20 19

26

27                                          _____
                                                  (Plaintiff's signature)

28                                          *Please continue to the next page.*

COMPLAINT *Page 3 of 4*

1

2                     **MAGISTRATE JUDGE JURISDICTION**

3        Please indicate below by checking **one** of the two boxes whether you choose to consent or
         decline to consent to magistrate judge jurisdiction in this matter. Sign this form below your
4        selection.

5        ☐    __Consent__ to Magistrate Judge Jurisdiction

6            In accordance with the provisions of 28 U.S.C. § 636(c), I voluntarily __consent__ to have a
         United States magistrate judge conduct all further proceedings in this case, including trial and
7        entry of final judgment.

8        **OR**

9        ☑    __Decline__ Magistrate Judge Jurisdiction

10           In accordance with the provisions of 28 U.S.C. § 636(c), I __decline__ to have a United States
         magistrate judge conduct all further proceedings in this case, including trial and entry of final
11       judgment.

12       Signed this 13 day of March        , 20 19

13                                                              _David Windom_
14                                                              _____
                                                                 (Plaintiff's signature)
15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT *Page 4 of 4*

In The United States District Court

For The Northern District Of California

Daniel Verduzco, T-45537

Plaintiff

Vs.

Mickey Price,

Defendants. et. al.

Case No.:

Complaint

42 U.S.C. Section 1983

## Claims

1. Petitioner Contends that Employees At Pelican Bay State Prison Knowingly And Unlawfully Utilized The Mental Health System As A Ruse to Retaliate Against Him for filing Administrative Grievances By Increasing the level Of Care Which Would Entail A Mandatory Transfer In Violation Of The First Amendment to The U.S. Constitution. In Doing So, Exacerbating Petitioners Mental Health Symptoms, Thus, Acting With An Utter Disregard towards Petitioners Serious Medical Needs that Resulted In Serious Physical Harm In Violation Of the Eighth Amendment Of The U.S. Constitution.

2. Petitioner Contends that Employees At Pelican Bay State Prison Intentionally Breached In A Commencement Of Retaliation By Deliberately Depriving, Denying, And Withholding Access To Mental Health treatment While He Was Suicidal. Subjecting Petitioner to Retaliation, Cruel And Unusual Punishment, And A Reckless Disregard to A Known Risk Of Substantial Harm In Violation Of His First And Eighth Amendments Of The U.S. Constitution.

3. Petitioner Contends that Employees At Pelican Bay State Prison failed to Take His Claims Of Suicide And Self-Harm Serious And took No Action Resulting In A Suicide Attempt, Self-Injurious Behavior, And the Amputation Of Petitioners finger In Violation Of the Eighth Amendment Of the U.S. Constitution.

4. Petitioner Contends that Employees At Pelican Bay State Prisons Acted With Absolute Deliberate Indifference After He Informed them Of his Intention to Cut Off His Own fingers And Demonstrated An Actual Willingness To follow Through that

-1-

1  No Reasonable Action Was Taken Despite Petitioners History Of Suicide Attempts And Documented
2  Incidents Of Serious Self-Harm, In Violation Of the Eighth Amendment Of the U.S.
3  Constitution.

4  5.  Petitioner Contends that He Was Subjected To Sexual Misconduct By Petitioners Primary
5  Clinical Psychologist Whom Took Advantage Of Petitioners Vulnerable Emotional And
6  Mental State And Was Employed At Pelican Bay State Prison Where this Sexual Abuse Occured,
7  In Violation Of the Eighth Amendment Of the U.S. Constitution.

8                                      Statement Of Facts

9  6.  Between April 16, 2016 through March 2017. Petitioner Had Cited Various Administrative
10  Grievances Exposing Preventable Suicide Attempts, Preventable Self-Harm, Delayed Medical Care,
11  Deliberate Indifference, And Various forms Of Retaliation by Employees At Pelican Bay State Prison.
12  From April 29, 2016 through September 14, 2016, Petitioner had Engaged In Suicide Attempts,
13  Self-Injurious Behavior, And Was Subsequently Involuntarily Admitted to A Department State
14  Hospital (DSH). Prior to April 2016 Petitioner Had Never Been A Participant Of the Mental
15  Health System. Petitioner Was Detained In Solidtary Confinement for About (16) Consecutive
16  Years Which Is "Akin To Being Sealed Inside A Coffin" Where his Mental Health Worsened. Thus,
17  Petitioner did Not Create his Own Mental Health Illness, However, it Was Not Until Petitioners
18  Release from Solidary Confinement After 16 Years that He Started To Engage In Suicide Attempts
19  And Self-Injurious Behavior.

20  7.   In Early March 2017. Petitioners Primary Clinical Psychologist Hannah Bush, Informed
21  Plaintiff That Chief Psychologist R. Limon Has Instructed H. Bush To Increase Petitioners
22  Mental Health level Of Care from Correctional Clinical Case Management System (CCCMS) To
23  Enhanced Outpatient Program (EDP) So that Petitioner Would Be transferred forthwith Because
24  Petitioner Is Writing Too Many 602's (Administrative Grievances) And Petitioner Has become A
25  Liability. Hannah Bush, Informed Petitioner that there Was No Clinical Basis To Increase
26  Petitioners level Of Care from CCCMS To EOP And They Are Trying to Get Rid Of Petitioner
27  for Exposing Civil Rights Violations. An Increase In level Of Care Would Mandate that Petitioner
28  Be Transferred To A EOP facility Within (30) Days. Petitioner Told Hannah Bush, That He

                                          -2-

1  Will Kill Himself If He Is Transferred To An EOP Facility On A Retaliatory Basis That Is

2  Not Clinically Necessary Or In the Interest Of His Mental Health. Petitioner Became Distraught And

3  Hinted Formulating A Suicide Plan.

4  8.)      On March 23. 2017, Petitioner Who Scheduled To A Random Inter-disciplinary Treatment Team

5  (IDTT) i.e.: Mental Health Committee Which Had Been Orchestrated By Mental Health Supervisors

6  Chief Dr Mental Health Psychologist Micker Price, Chief Psychologist R. Limon, Senior Psychologist

7  Peter Sayer, And Senior Psychologist Rita Ohesi. During IDTT Of March 23, 2017, Petitioners

8  Primary Clinical Psychologist Harmon Bush Did Not Recommend On Support the level Of Care Increase

9  To EOP. Psychiatrist Theodore Utecht, Psychologist Santa Houston, And Psychologist J. Kelly,

10 Did Not Find A Clinical Basis To Increase Petitioners level Of Care To EOP. Either. Petitioner,

11 Expressed That He Had Not Engaged In Any Self-Injurious Behavior In Six Months Nor Had He Been

12 Admitted To A Mental Health Crisis Bed (MHCB) In Six Months And H. Bush, S. Houston, J. Kelly,

13 And T. Utecht Au Do Not Agree With An Increase In level Of Care. Senior Psychologist Rita

14 Ohesi And Senior Psychologist Peter Sayer Overrode The Majority And Made An Executive Decision

15 To Increase Petitioners Level Of Care From CCCMS To EOP. Petitioner Became Distraught And

16 Told P. Sayer And R. Ohesi that they Are Abusing the Mental Health System to Retaliate

17 Against Him for Exposing Civil Rights Violations By PBSP Employee. Petitioner Literally Begged

18 R. Ohesi And P. Sayer Not To Do this, it Will Send him Into Distress. At the Conclusion

19 Of IDTT Petitioner Made it Unequivocally Clear that He Will Attempt Suicide And Kill Himself

20 Before He Arrives To Any EOP Facility. Petitioner Also Look At Correctional Counselor II A. Bond,

21 And Stated this Is A Mistake, I'm Going To Die Before I Do. A. Bond Simply Told

22 Petitioner; Oh, I Know. Believe Me I Know But this One Is Mental Health. Not One

23 Employee Present At this IDTT Hearing Showed Any Regard At Petitioners Statements Of Suicide

24 If this Retaliatory Transfer Is forced Upon Him, Thereby Knowing The Retaliation And Nature

25 With Deliberate Indifference Of A Known Risk Of Potential Substantial Physical Harm.

26 9)   From March 23, 2017 through April 27, 2017, Petitioner Informed Associate Warden

27 D. Stuart, Correctional Counselor II A. Bond, Correctional Counselor II J. Rish, Chief

28 Of Mental Health Micker Price, Chief Psychologist R. Limon, Senior Psychologist Rita Ohesi,

-3-

1  Psychologist Hannah Bish, Psychologist Frances Schoening, Sergeant J. Anderson, Telepsychiatrist
2  Mark Petterson, Correctional Counselor L. Brunner, Classification Services Representative Chris
3  Bleeze Via Sick Call Slips, RDCR 22 Forms, And Verbally that Petitioner Is Distraught, Has been
4  Subjected to A Retaliatory Transfer And Will Unequivocally Kill Himself Before He Arrives to A
5  EOP Facility, Despite the known Risk Of Substantial Physical Harm Or Suicide, these Employees
6  Noted With Deliberate Indifference Toward Petitioner Statements Of Self-Harm In Violation Of
7  Petitioner Constitutional Rights.
8  10). On March 23, 2017, Petitioner Filed An Emergency Administrative Grievance Stating That
9  this Retaliatory Transfer Will Place Him At Great Risk Of Suicide And Petitioners Grievance Pertains
10  to Life Or Death And Requires Immediate Intervention. Chief Psychologist R. Limon Accepted
11  Petitioners Administrative Grievance On March 24, 2017 but Had Psychologist Hannah Bish Deem it
12  As Non-Life Threatening And therefore Not An Emergency Appeal. Thus, Acting With A Reckless
13  Disregard To A known Risk Of Substantial Harm Or Suicide. In Addition, Petitioner Waste the
14  Prison Law Office And Clearly Stated that He Is Distraught And Petitioner Has Every
15  Intention Of Cutting Off His Fingers, This Information Was Conveyed to CDCR By the Prison
16  Law Office.
17  11).   On March 27, 2017 Correctional Counsellor II J. Roch Informed Petitioner that A
18  Departmental Review Board (DRB) Representative Named Perez Had Been Appriced Of Petitioners
19  Intent to Kill Himself If Prison Bort State Prison Proceed With this Transfer And (DRB)
20  Representative Perez Stated If Petitioner Wishes to Kill Himself that Is Petitioner Choice,
21  (DRB) Representative Perez Retained the Authority to Act but Failed to Do So And Acted
22  With A Reckless Disregard to A Known Risk Of Serious Harm Or Suicide.
23  12). On March 30, 2017, Petitioner Attended A Institutional Classification Committee (ICC) And
24  Was Put Up For An Expedited Transfer to A EOP Facility Due to the Recent Increase In
25  Level Of Care. Petitioner Begged Chief Deputy Warden R. Bell to Please Post Pond this
26  Recommendation Because He Will Kill Himself Before Arriving to Any EOP Facility. Petitioner
27  Told R. Bell that the 16 Alarm Petitioner Spent In Solitary Confinement With No
28  Human Contact Messed Him Up And Petitioner Cannot Endure More Abuse. R. Bell Sarcastically

-4-

1  Told Petitioner Promise, Unwin Clark Head Brought to Your Cell Au Since Clems Is Room Service.
2  Petitioner Told R. Bell. Clm. Sent 16 Items Inside A Concrete Box And See If it Does Not
3  Affect Clm. Petitioner Begged R. Bell To Please Hold Off And Contact Sacramento Because
4  Petitioner Is Going To Kill Himself. If. then Follow through With this. thus. Actions With
5  A Reckless Disregard To A Known Risk Of Physical Harm On Suicide.
6  13)   For the Proceeding 27 Days Petitioner Continued To Express Absolute Despair And His
7  Unwavering Intention To Kill Himself On Cut Off His Fingers. Petitioner Began to Hoard his
8  Medications And Had A Razor Blade that He Obtained from Another Inmate. Psych Techs
9  did Not Observe Petitioner Daily Disbursement Of Medications Despite Extensive Documentation
10 That Petitioner Had A Suicide Plan. thus, Acting With A Reckless Disregard To A Known Risk
11 Of Physical Harm On Suicide.
12 14)   Chief Of Mental Health Mickey Price Specifically Gave Explicit Instructions that Petitioner
13 Do Not To Be Admitted To A Mental Health Crisis Bed (MHCB) but Instead Sent On His Way
14 To Another Facility. Petitioner Was In A Perpetual State Of Fear, Despair, Paranoia, Depression,
15 And Anxiety etc...
16 15)   On April 27, 2019, Psychologist Hannah Bush And Psychologist Frances Shoenius told
17 Petitioner that the transfer Had Been Rescinded Petitioner Did Not Believe this And Made it
18 Absolutely Clear To H. Bush And F. Shoenius that He Will try And Kill Himself When the
19 Transfer Is Initiated And He Will Arrive Dead To Any EOP facility. F. Shoenius Contacted
20 Chief Of Mental Health Mickey Price And Inquire Whether Petitioner Needs to Be Admitted Into A
21 Mental Health Crisis Bed (MHCB). Mickey Price, Ordered F. Shoenius Not To Admit Petitioner,
22 thus, Depriving Petitioner Of Mental Health Intervention And Acting With A Reckless Disregard
23 Towards A Known Risk Of Substantial Physical Harm On Suicide, Allowing The Potential Danger
24 Of Suicide To Occur.
25 16)   Petitioner Had Followed through On Prior Claims Of Suicide that Resulted In Serious
26 Physical Harm Yet for A Matter Of Weeks Leading Up To April 28, 2017, Petitioner Repeatedly
27 Stated that He Would Kill Himself And Start Cutting Off His Fingers And Begged for Help
28 Yet Petitioner Was Never Placed Into A Safe Environment On Referred to A Department State

-5-

1  To Address His Threats Of Suicide And Self-Harm. In fact, On April 28, 2017 Crisis Unit
2  Psychiatrist T. Otecht And Crisis Unit Psychologist Watson Recommended that Petitioner Be
3  Admitted to Pelican Bay State Prison's Mental Health Crisis Bed to Address His Serious Mental
4  Health Needs but Chief Of Mental Health Mickey Price Override This Decision, thus, Knowingly
5  Acting With An Utter Reckless Disregard to A Risk Of Unnon On Suicide. Leading Up to April
6  28, 2017 No De-escalation Tactics Where Attempted, Period!

7  17)  Despite the known Risk Of Self-Harm On Suicide On April 28, 2017 At About 0530 HRS.
8  Correctional Sergeant John Doe #1 Approached Petitioners Cell Door Which Sent Petitioner Into
9  A State Of Panic And Despair. Petitioner Sealed his Cell Door from the Inside And
10  Asked Correctional Sergeant John Doe #1 If He Was Informed that Petitioner Was
11  Prepared to Kill Himself. Correctional Sergeant John Doe #1 Said, Yes But He Does Not
12  Want that to Happen. Petitioner told Correctional Sergeant John Doe #1 that Petitioner
13  Will Not Arrive Alive To Any EOP facility. Petitioner Wrapped The Hoarded Pills And
14  Razor Blade In Plastic Which He Then Inserted Into His Rectum.

15  18)  Correctional Lieutenant John Doe #2 Approached Petitioners Cell Door. Petitioner told
16  Correctional Lieutenant John Doe #2 that Petitioner has Stated for Weeks that He Will
17  Kill Himself Before Arriving to A EOP facility. Petitioner told Correctional Lieutenant
18  John Doe #2 that Petitioner Will Chew On his Own tongue And Choke On it Once Put
19  Inside A transportation Vehicle Or to Bring Petitioner A Pen And Multiple Sick Call Slips
20  So that Petitioner Can Document His Intentions to Kill Himself.

21  19).  For the Proceeding two Hours Or So Petitioner Personally Handed Chief Of Mental Health
22  Sick Call Slips Every 20 Minutes Or So Clearly Stating That Petitioner Is In Distress And
23  Petitioner Will Chew Off his Own tongue And Choke On it As Soon As Petitioner Is Placed In
24  A transportation Vehicle. Petitioner Clearly Stated that He Will Kill Himself In Route
25  To A EOP facility And Petitioner Is Overwhelmed By the Retaliation. Petitioner Also
26  Personally Gave Mickey Price Another Sick Call Slip Stating that He Wants His Sister
27  Notified Upon His Suicide. Petitioner Begged for Mental Health Intervention, None
28  Was Provided, Which Was Retaliatory And Amounted to A Reckless Disregard to A
Known Risk Of Harm On Suicide In Violation Of the first And Eighth Amendments.

20) Petitioner Was Not Screened Or Given A Suicide Risk Assessment And No Precautionary Measures Were Put Into Place Despite Petitioners Statements Of Killing Himself Once Placed Inside The Vehicle. Warden Price Simply Told Petitioner Custody Officers Have Been Informed Of Your Desire to Kill Yourself. Petitioner Was Not Combative And Told Warden Price to Will Not Resist Orders to Get In the Vehicle But I'm Going to Kill Myself.

21) Petitioner Primary Clinician Psychologist Hannah Bush Approached Petitioners Door And Told Petitioner that Warden Price, R. Dhesi, And Other Supervisors Are Responsible for This And She Is Sorry But they Made Her Do it And it's Wrong On So Many Levels And it's Because Petitioners Administrative Grievances that they Are Doing this to Petitioner. H. Bush Told Petitioner this Is Not About Mental Health its About Getting Rid Of Petitioner for Exposing Conditions At PBSP.

22) Warden Price Instructed Custody Officers to Place Petitioner In the Vehicle Which Petitioner Was Unaware Of. Petitioner Was told that He Was Going to Meet With Mental Health In A Confidential Setting. Correctional Lieutenant John Doe # 2 And Correctional Lieutenant J. Frisk Asked Petitioner to Cuff Up Via the Food Port. Petitioner told Correctional Lieutenant John Doe # 2 And Correctional Lieutenant J. Frisk If they Put Petitioner In A Vehicle He's Going to Chew On His tongue, Choke On it, And Kill Himself. Correctional Lieutenant J. Frisk Told Petitioner that Petitioner Is Going to Meet With Mental Health. Correctional Lieutenant John Doe # 2 Confirmed it. Petitioner Was Not Stripped Of His Clothes Or Searched Nor Was A Scan Of the Hand-Held Metal Detector Performed By Correctional Lieutenant J. Frisk Or Correctional Lieutenant John Doe # 2. Which Allowed Petitioner to Maintain Possession Of the Razor blade And Hoarded Pills. Petitioner Made it Unequivocally Clear Of his Intentions Of Self-Harm And/Or Suicide. Thus The failure to Search Petitioner Was A Reckless Disregard to A Known Risk Of Physical Harm Or Suicide.

23) Petitioner Was Handcuffed Behind his Back By Correctional Lieutenant J. Frisk Or Correctional Lieutenant John Doe # 2, Petitioner Does Was Denied He Blacked Out And Was Escorted By Correctional Lieutenants J. Frisk And John Doe # 2, However,

1. After About Walking 20 Or 30 feet. Petitioner Was Put Against A Wall And Leg Irons
2. Were Applied. He Was Waist Restrains. Petitioner did Not Become Combative And Realized
3. That He Was Not Meeting With Mental Health. Inmates Are Never Put In Waist Restraints
4. Unless the Inmate Is In A Secure Environment i.e. Inside A Cell Or Holding Cell And
5. Restraints Are Applied Via the food Port. , the Purpose Of Not Putting Petitioner In A
6. Cell Or Holding Cage As Restraints Were Applied Was So Petitioner Cannot Summons for
7. A Mental Health Suicide Risk Assessment. Petitioner Told Lieutenants J. Frick And
8. John Doe # 2 that Petitioner Is Not Pruving And He Is Going To Kill Himself.
9. Petitioner Was Escorted to the Group Room And Remained Standing As Correctional
10. Lieutenants J. Frick And John Doe # 2 Stood To his left And Right Side .
11. Psychologist Hannah Bush Spoke With Petitioner for less than two Minutes, Petitioner
12. Reiterated that He Would Chew Off his tongue Once Placed In A Vehicle And He Needs
13. Mental Health Care. H. Bush Told Petitioner that Mickey Price Has Made the Decision
14. With Supervisors Not To Admit Petitioner to The Crisis Unit Which Amounts To A Denial
15. Of Mental Health Care To A Serious Mental Health Need. Petitioner Was Put On A
16. Transportation Van By Correctional Lieutenants J. Frick And John Doe # 2. The
17. Transportation Van Was Pre-Position Outside the Unit Entrance Door. Petitioner Was Still
18. In A State Issued Jump-Suit Not A Paper thin Transparent Jump-Suit Which Is Typical
19. for Transfers .
20. 24). Petitioner Informed Correctional Officer Watkins And Correctional Officer John Doe
21. #3 that they Will Arrive With A Dead Body. Petitioner Was Driven to R & R Correct
22. Correctional Officers Watkins And John Doe # 3 Exited the Vehicle And Entered R & R
23. leaving Petitioner Alone In the Vehicle Unsupervised Despite Petitioners Statements that He Would Chew
24. On his Own tongue. Petitioner began to Chew On his tongue . Correctional Officers Watkins And John
25. Doe # 3 Returned With R.N. Murray Whom Observed blood On Petitioners Shirt (Jump-Suit) And On
26. Petitioners Mouth. Registered Nurse Murray Asked Petitioner Is He Okay? Petitioner Stated that He
27. Was Suicidal. Petitioner Was Driven To Medical. Correctional Officers Watkins And John Doe # 3
28. Acted With A Reckless Disregard to A Known Risk Of Harm Or Suicide By leaving Petitioner

1   Where Was Distraught And Suicidal Alone And Unsupervised.

2   25).   Upon Arriving to the Correctional Treatment Center (CTC) Registered Nurse Eric Golding

3   And Registered Nurse John Doe # 4 Approached the Vehicle And Asked Petitioner Is He Okay.

4   Petitioner Reiterated that He Is Suicidal And Needs Mental Health Attention. Correctional

5   Officer Watkins And John Doe #3 Escorted Petitioner to the Urgent Treatment Area

6   (UTA). Petitioner Kept Stating Ive Been Telling Uso Au, Au Mourning I Would Kill Mysele

7   And People Have Known For Weeks. Correctional Officer Watkins And John Doe # 3 Told Petitioner,

8   Were Just Told What to Do.

9   26)   Once In the UTA Physician Assistant Doctor L. Thomas Attempted to Evaluate

10   Petitioners Tongue, Petitioner Refused Medical Treatment And Reiterated that He Is Suicidal

11   And Will Kill Himself If Put Back On the Van, Petitioner Begged L. Thomas For Mental

12   Health Intervention Which L. Thomas Withheld to Retaliate Against Petitioner For A

13   Previous Complaint Against L. Thomas By Petitioner. L. Thomas Personally Knew Petitioner

14   Had A History Of Serious Suicide Attempts, Had Just Evented In Self-Indurious Behavior,

15   Was Actively Suicidal Yet L. Thomas Did Not Refer Petitioner to Mental Health For A

16   Suicide Risk Assessment Deliberately Depriving Petitioner Of Mental Health Intervention.

17   Althsodh. Petitioner Clearly Stated Repeatedly that He Was Suicidal And Personally Told

18   L. Thomas that He Will Attempt Suicide If Put Back In the Transportation Van, L.

19   Thomas Instructed Correctional Officers Watkins And John Doe # 3 to Put Petitioner

20   Back On the Van. Chief Executive Officer (CEO) Maureen Mclean, Chief Medical

21   Executive (CMO) D. Jacobsen, Chief Of Mental Health Mickey Price, And Lieutenant

22   J. Frick failed to Intervene And Collectively Authorized Petitioners Placement Back

23   Into the Vehicle Despite the Apparent Risk Of Physical Harm And/Or Suicide. Thereby,

24   Contributing In the Denial Of Mental Health Care And Actions With Deliberate Indifference

25   Towards Petitioners Serious Medical / Mental Health Needs. Thus. Supportive Petitioners

26   Claims that the Denial Of Mental Health Care During A Crisis Was Retaliatory In Nature to

27   Proceed With A Retaliatory Transfer.

28

27). Once Back In the Transportation Vehicle No Preventable Measures Were Taken Despite, Knowing that Petitioner Was Suicidal, Had Chewed On His tongue, And His Statement to Kill Himself Petitioner Was left Alone Unsupervised. Petitioner Retrieved the Razor blade And Hoarded Pills from the Restroom And In Petitioners State Of Despair He Became to Ingest Pills In An Attempt to End His Life. Petitioner Inadvertantly Defecated On Himself Which May Have Been Caused By Ingesting The Pills.

28). At Same Point Correctional Officer John Doe # 3 Approached the Vehicle to Retrieve his Lunch And Smell the Feces And Told Petitioner; What Clea Do, Suit On Yourself, Grabbed his Lunch Closed the Door And Walked Away And Started talking to Other Officers; He Suited On Himself. Petitioner Was left In his Own Waste In the Vehicle And Unsupervised An Additional 10 Minutes Or So And Was Eventually Escorted Back Into The Urecent Treatment Area.

29). Petitioner Informed Employees That He Had Consumed Pills And Just Wants to Die. L. thomas Inquired If Aware Sean Petitioner Ingest Pills Correctional Officer John Doe #3 Said No And Stated, I Dont Doubt it, He (Petitioner) has Done Everything He Said He Would Do Today Meaning; Chew On his tongue And Attempt Suicide. Petitioner Who In Handcuffs When He Retrieved the Pills And Because Of that Petitioner Dropped Some On the Van floor Board Which He Was Unable to Reach. Petitioner Began to tell R.N. Eric Bolding that Petitioner Has Maintained He Was Suicidal Since Petitioner first Arrived to the Correctional treatment Center And If Petitioner Dies it Should Not Have Happened. Petitioner Begged for Mental Health Care but Instead Was Left In His Own feces for Hours. leaving Petitioner Unsupervised Was A Reckless Disregard To A Known Risk Of Physical Harm Or Suicide And Remaining In feces for Hours Was Cruel And Unusual Punishment.

30). Maureen Mclean, Donna Jacobson, L. thomas, Mickey Price Continued To Deprive Petitioner Of Any Mental Health Intervention In An Endeavor to Move Forward With the transfer to A EOP facility. thus, Denying Petitioner Access to Mental Health Care In Violation Of the Eighth Amendment. Furthermore, it Was Retalitory In Nature In Violation Of The first Amendment.

-10-

31)  Correctional Sergeant John Doe # 1 Began to tell Petitioner, "I've Never Seen This Before, I Don't Know Who You Pissed Off But Their Doing Everything They Can to Get Rid Of You And Everything that Has Happened Today Is Abstract Where's, the Only Reason You're Not leaving Now Is Because We Are Refusing to Take You, I've Contacted My Supervisor But Mental Health And Medical Supervisors Are Still Asking Us to Take You. This Time Were Refusing. Correctional Officer John Doe # 3 Started Telling Petitioner That He Experienced A Suicide On Transport Before, the Inmate Strangled Himself With A Seatbelt. Petitioner Then Asked John Doe # 3 Why Did He leave Me Unsupervised, When He Knew I Said I Would Kill Myself. John Doe # 3, Told Petitioner, "I'm Sorry Man, I Had Orders, I'm Just A C/o (Correctional Officer). Employees At Pelican Bay Intentionally Deprived Petitioner Of Mental Health Care, Exacerbating His Symptoms, Contributing to His Distress, And Acting With A Reckless Disregard for Petitioners Safety When He Was Suicidal.

32)  Petitioner Was Eventually Admitted to Pelican Bay State Prisons Mental Health Crisis Bed About Six Hours Later but Was Never Scanned With the Handheld Metal Detector Despite Petitioners Statements for the Past three Weeks that He Was Going to Cut Off His Own fingers. Petitioner Was Distraught, Paranoid, Depressed, And Mentally Exhausted. failing to Wand Petitioner Allowed Him to Retain Possession Of the Razor blade, And Amounts to Deliberate Indifference to A Known Risk Of Harm Because Petitioner Had Prior Incidents Of Self- Harm At PBSP's MHCB.

31)  On April 29th, 2017 On April 30th 2017, Petitioner Met With Clinical Psychologist Ashley Coubeau At Pelican Bay State Prisons Mental Health Crisis Bed And Informed A. Coubeau that Petitioner Has Every Intention Of Cutting Off His Own fingers So Please Do Not Retain Him Here Beyond Ten Days, He Will Go Crazy.

32)  On May 01. 2017, Petitioner told Psychiatrist T. Utecht At Pelican Bay State Prisons Mental Health Crisis Bed That Petitioner Is Going to Cut Off His Own finger. Ashley Coubeau And T. Utecht Did Not Take Petitioners Statements Seriously Enough to Take Precautionary Measures. Thus, Acting With A Reckless Disregard to A Known

-11-

1  Risk Of Serious Harm.

2  33)    On May 01, 2017, Petitioner Met With Psychologist Hannah Bush. Petitioner Informed

3  M. Bush that Petitioner Was In Possession Of A Razor Blade And Was Going To Cut Off His

4  Own finger. H. Bush Doported Petitioner And Did Not Advice Petitioner Not to Cut Off

5  His finger Nor Did She Report that Petitioner Was In Possession Of A Razor Blade

6  While In A Mental Health Crisis Bed And Simply told Petitioner Okay When He Expressed

7  His Intention to Cut Off His finger. Thereby, Contributing To A Known Risk Of Serious

8  Physicall Harm And Allowing Harm To A Mental Health Inmate And Did Absolutely

9  Nothing To Prevent Self- Harm In Violation Of the Eighth Amendment.

10  34)    On May 06, 2017, While On Suicide Precaution Petitioner Was Still At Pelican Bay State

11  Prisons Mental Health Crisis Bed And Made His first Attempt to Cut Off His Own finger

12  But Due To Unbearable Pain Sought Medical Attention, Was Treated, And Received four

13  Stitches. Although, Petitioner Claimed to Have fallen that Was Impossible As MHCB

14  Cells Have No Sharpe Edges And Are Desioved for Suicidal Inmates. Petitioner Had

15  Made Several Statements Of His Desire/Intention To Cut Off fingers Yet No Realistic

16  Preventative Measures Were Put Into Place following Petitioners first Attempt. He Was Never

17  Scanned through A Metal Detector Nor Was He Watched More Keenly. Thus, Employees On

18  May 06, 2017 At PBSP MHCB Acted With Deliberate Indifference towards Petitioners Serious

19  Mental Health Needs And Safty.

20  35)    On May 07, 2017, Petitioner Removed His Own Stitches While On Suicide Watch

21  Which Went Unnoticed for Hours And Once Discovered Employees At PBSP MHCB Did Not

22  Take Any Reasonable Steps To Prevent further harm. Petitioner Was Not Monitored More

23  Closely. His Cell Was Never Searched And He Was Still Not Scanned through A Metal

24  Detector Handheld Or Otherwise, Despite Repeated Documented Claims that Petitioner Is

25  Going to Cut Off His Own finger. Employees At Pelican Bay State Prisons Mental Health

26  Crisis bed On May 07, 2017 Acted With Deliberate Indifference towards Petitioners Serious

27  Mental Health Needs To A foreseeable Risk Of Physical harm.

28

36) On May 08, 2017, Petitioner Was Still In PBSPs MHOB And Appeared Before BDTT And Begged To Be Sent To A Department State Hospital (DSH). Petitioner Told An IDTT Members On May 08, 2017, that He Cannot Mentally Handle Another Seven Days In The MHCB. Petitioner Told IDTT Members On May 08, 2017 that He Was Gonna Cut Off Fingers After He Was Retained An Additional 10 Days. However, No Reasonable Preventative Measures Were Put Into Place to Prevent Hham. Petitioner Was Not Scanned By A Metal Detector Handheld Or Otherwise, Petitioners Hands Were Not Monitored Or Inspected Hourly to Detect If Petitioner Was, In fact, Cutting Off Fingers. An IDTT Members At PBSPs MHCB On May 08, 2017, Acted With Deliberate Indifference Towards Petitions Serious Mental Health Needs Despite Petitioners History Of Self-Harm And One Attempt to Cut Off His Fingers Two Days Prior.

37) On May 08, 2017, Psychologist Ashley Coburn Approached Petitioners Cell Door And Told Petitioner He's Being Put On Suicide Watch. Petitioner Told A. Coburn that His Statements To Cut Off fingers Are Not Threats. Petitioner Is Serious And Needs Acute Care Immediately. Please Believe Him, He's Gonna to Cut Off His fingers. However, Methough, A. Coburn Suspected that Petitioner May Have Something to Cut Off His fingers With, His Cell Was Never Searched, He Was Never Given A Risk Assessment, Put through A Metal Detector, Nor Were His Hands Inspected Hourly Or Regularly to Determine If Petitioner Started Cutting His fingers. Ashley Coburn Acted With A Reckless Disregard And Deliberate Indifference Towards Petitioners Serious Mental Health Needs. Petitioner Was A Detriment to Himself And Could Have Been Put On forced Medication Which Was Never Explored.

38) Petitioner Even Began to Tell The Employee Responsible for Watching Him If She Had Sick Days, Petitioner Kept telling Her Go Home Just Leave for today, Please. Clau Don't Want to Be Held Responsible for What Is About to Happen. She Asked Petitioner What Are Clau Talking About. Petitioner Told Her, You'll See. Yet Petitioners One On One Became Alarmed. Thus Acting With Deliberate Indifference Towards Petitioner Serious Mental Health Needs And Safety.

-13-

39) On Mar 08, 2017 While On Suicide Watch Petitioner Propped Up His Safty Blanket like A Shield Obstructing An Flesh And Proceeded to Slice through this finger to the Bone As He Moaned For About An Hour And One-Half Hour. Petitioner Safty Blanket Was Covered In Dark Blood. Safty Blankets have the texture Of Cardboard And Will Stand Up Right If Positioned Properly. Petitioner layed On His Back On the Floor And At the Chest Area Had About A 2 foot Wall that He Used As He Cut through His finger. Registered Nurse Jane Doe # 5 Knew Or Should have Known that Petitioner Was Engaging In Self-Harm that Did Absolutely Nothing. Petitioner Had Already Made An Attempt to Cut Off His finger On Mar 06, 2017, then Removed the Stitches On Mar 07, 2017, And Was Specifically Placed On Suicide Watch On Mar 08, 2017 for Making It Unequivocally Clear that He Was Going to Start Cutting Off fingers. Jane Doe # 5 failed to Become Alert When Petitioner Created A Barrier And Was Making Sounds Of Pain As He Cut through His finger. Petitioner Cut About Half Of His finger to the Bone On Mar 08, 2017. R. N. Jane Doe # 5 Acted With A Reckless Disregard to A Known Risk Of Physical Harm Or Suicide When HER Sole Responsibility Was to Never take Her Eyes OFF Petitioner And Immediately Report Any Suspicious Activity Of Self-Harm. Petitioner Was Not In His Right Mind.

40) On Mar 09, 2017, While On Suicide Watch Petitioner Propped Up His Safty Blanket Again for About One And One Half Hour And finished Cutting His finger full Circle to the Bone. Petitioner Moaned the Pain But Jane Doe # 6 Could Have Cared less. Petitioner Even Attempted Cutting through The Bone. Petitioner finger Was Already Decaying And Partially Black In Color. Petitioner Blanket Was full Of Dark Blood Stains. Jane Doe # 6 Should Have Known Petitioner Was Engraving In Self Harm And Should Have Attempted to Inspect Petitioners fingers, It Was Obvious that Petitioner Was In Pain And Hiding His Hands. Jane Doe # 6 Acted With A Reckless Disregard to A Known Risk Of Self Harm And/Or Suicide And Was Deliberate Indifferent towards Petitioners Serious Mental Health Needs. Petitioner Was Treated Poorly Because He Was Known for Exposing Civil Right Violations.

41) On May 09, 2017, Petitioner Pleaded to Be Seen Urgently By Mental Health But it took A While to Be Seen. Petitioner Was Handcuffed By Correctional Officer John Doe #7, But Petitioner Was Not Inspected for Signs Of Self-Harm. Petitioner Was Escorted to A Holding Cell Yet Not One Employee Noticed Petitioners finger. It Was Not Treated When Reported His finger to Clinical Psychologist L. Yu. Petitioner Was In Pain, His finger Was Severed full Circle to the Bone And Had Decayed — Amputation Was The Only Option. Despite Petitioner Repeated Statements to Cut Off His fingers, Petitioners first Attempt To Cut Off His finger, Or Removing His Stitches, it Was Not Until After The Amputation That Mildred Price Submitted An Order Mandating that Petitioner Keep Both Hands In Visual Inspection At All Times. This Was A foreseeable Incident Yet Employees At Pelican Bay State Prisons (PBSP) Mental Health Crisis Bed Took No Reasonable Action, And Collectively Acted With An Utter Disregard towards A Known Risk Of Physical Harm Which Amounts To Deliberate Indifference to A Serious Mental Health Need. Petitioners Level Of Care Was Decreased Back to CCCMS 10 Days After He Cut Off His finger full Circle to the Bone Which Makes No Sense And Supports Petitioners Contention that He Was Initially Made EOP Out Of Retaliation. Defendants Cannot Argue Must Decreasing Petitioners level Of Care After losing A finger Is Clinically Appropriate.

42)   Petitioner Suffers With Depression, Anxiety And Has Been Diagnosed With PTSD, Bipolar, Bonrder line Personality Disorder And Other Mental Health Issues Including Adjustment Disorder. Petitioner Spent About 16 Consecutive Years In Solitary Confinement Which Affected His Mental Health. Petitioner Is Extremely fearful And Has Panick Attacks Around People.

43)   Clinical Psychologist Hannah Rush Treated Petitioner Between February 01, 2017 through April 28, 2017. Rush Was Employed At Pelican Bay State Prison During this Period. Psychologist Rush, H. Began to Prey On Petitioners Vulnerable Emotional State Which Eventually Manifested Into Sexual Abuse. Psychologist Rush, H. Knew that Petitioner Was Extremely Depressed And Suicidal And Convinced Petitioner that He Can Trust Her.

-15-

44). Psychologist Bush. H Masturbated During Therapy Sessions For Sexual Gratification.
Collected Her Vaginal Fluids And Would Have Petitioner Lick it Off Her Fingers. H. Bush
Exposed Her Breast And Put Her Nipples through the Lace Mesh So Petitioner Would
Suck it. Psychologist H. Bush Would Masterbate At Home And Climax On Clothing
Which She Would Give to Petitioner During Sessions to Suck On. Psychologist H. Bush
Unmaipulated, took Advantage Of, And Used Pet. tioner As A Sexual Object. The
Sexual Abuse Occured Multiple Times. Petitioner Was Confused And A Victim.
Psychologist H. Bush Always Maintained Control. the legal Concept Of Consent Does
Not Exist between An Employee And Inmate. the Sexual Abuse that Petitioner Was
Subjected To Amounts to An Eighth Amendment Violation Of Cruel And Unusual
Punishment And Deliberate Indifference to Petitioners Medical Health Needs.

### Prayer For Relief

45) Granting Petitioner Declaration that Acts And Omissions Described Herein Violated
His Rights Under the Constitution And Law Of The United States, And
46) Granting Petitioner Compensatory Damages In the Amount Of $50,000.⁰⁰ Against
Each Defendant, Jointly And Severally.
47) Plaintiff Seeks Punitive Damages In the Amount Of $50,000.⁰⁰ Against Each
Defendant, Jointly And Severally.
48) Petitioner Also Seeks Recovery Of An Cost In this Suit, And Any Additional Relief
this Court Deems Just, Proper, And Equitable.
49) Petitioner Seeks Appointment Of Counsel to Defend His Civil Rights Which Were
Grossly Violated.

### Verification

I Have Read the foregoing Complaint And Hereby Verify that the Matters Alleged
Therein Are True, Correct As to those Matters Alleged On Information And Belief,
And, As to those, I Believe them to Be True. I Certify Under Penalty Of
Perjury that the foregoing Is true And Correct.
Executed March 13, 2019                                    Daniel N. ____

Daniel Verduzco , T-45537

v.

Mickey Price et., Al.,

Case Number:

PROOF OF SERVICE

I hereby certify that on March 18, 2019_____, I served a copy of the attatched Complaint Pur. 42 U.S.C. § 1983 Pages 1-4 ; Complaint Pages 1-16 by placing a copy in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the United States Mail at Crescent City California_____:

(List name and address of each defendant or attorney served)

United States District Court
Clerk's Office
450 Golden Gate Ave
San Francisco, California 94102

Attorney General
455 Golden Gate Ave , Suite 11000
San Francisco, California 94102-7004

I declare under penalty of perjury that the foregoing is true and correct.

Daniel Verduzco

(Signature of person completing service)

1   United States District Court                    March 13, 2019

2   Clerks Office

3   450 Golden Gate Ave              RECEIVED

4   Sun Francisco, California  94102      MAR 18 2019

5                                  SUSAN Y. SOONG
                                 CLERK, U.S. DISTRICT COURT
6   Dear Court Clerk,            NORTHERN DISTRICT OF CALIFORNIA

7

8   Enclosed Is A Complaint. Please Process (file) My Complaint,

9   Issue Me A Case No: And Provide Me An Endorsed Copy.

10  D An Mailing My Complaint Today March 13, 2019.

11

12  Thank You For Your Time Respectfully.

13

14  Daniel Verduzco #T-45537              Verduzco

15  OSP Cor. ASU-1 Cell #165

16  P.O. Box 3456

17  Corcoran, California 93212      CV-19-1440

18

19                                           JSW
20                                      (PR)

21

22

23

24

25

26

27

28