1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

7 DANIEL VERDUZCO,

Plaintiff,

Case No. 19-cv-01440-JSW

8

v.

**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT; ON PENDING MOTIONS; STRIKING BUSH'S ANSWER TO FOURTH AMENDED COMPLAINT**

9

10 MICKEY PRICE, et al.,

Defendants.

11

Re: Dkt. Nos. 126,127, 147, 148, 164, 172, 177

12

13 **INTRODUCTION**

14 Plaintiff, a California prisoner proceeding pro se, filed this civil rights action under 42

15 U.S.C. § 1983 against current and former staff members of Pelican Bay State Prison ("PBSP"),

16 where Plaintiff was formerly housed. The operative pleading is the Third Amended Complaint

17 ("TAC"). (ECF No, 93.) Summary judgment was previously granted to certain Defendants.

18 Defendants Hannah Bush, Lieutenant Basso, and Rook remain. Basso and Rook filed a joint

19 motion for summary judgment (ECF No. 126), and Bush filed a separate motion for summary

20 judgment (ECF No. 127). Plaintiff has opposed both motions, and Defendants have filed reply

21 briefs. Plaintiff has also filed numerous motions, memoranda, and other documents, and

22 Defendants have filed additional miscellaneous motions.

23 After consideration of the entire record and all papers filed by the parties, the motions for

24 summary judgment are GRANTED, Plaintiff's motion "for evidence" (ECF No. 147) is DENIED,

25 Plaintiff's motions for an extension of time (ECF Nos. 148, 164) are GRANTED, Plaintiff's ex

26 parte motion (ECF No. 172) is DENIED, Defendants' motion to strike Plaintiff's "sur-replies" [1]

27

28 [1] Defendants identify ECF Nos. 173 and 176 as sur-replies. Although the Court did not grant (nor did Plaintiff request) prior permission to file sur-replies, in light of Plaintiff's pro se and

United States District Court
Northern District of California

1     (ECF No. 177) is DENIED, and Defendant Bush's Answer (ECF No. 113) to the Fourth Amended

2     Complaint is STRICKEN.[2]

3                                    **DISCUSSION**

4     **I.     Standard of Review**

5           Summary judgment is proper where the pleadings, discovery and affidavits show that there

6     is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

7     matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the

8     case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,248 (1986). A dispute as to a material fact is

9     genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

10    party.

11          The moving party for summary judgment bears the initial burden of identifying those

12    portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

13    issue of material fact. *Celotex Corp.v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party

14    has met this burden of production, the nonmoving party must go beyond the pleadings and, by its

15    own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.

16    If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact,

17    the moving party wins. *Id.*

18    **II.    Discussion**

19                **A.     Defendant Rook

20                       1.     Background[3]

21          Defendant Rook, a nursing assistant at PBSP, was assigned to monitor Plaintiff in a

22    "Mental Health Crisis Bed" ("MHCB") on May 8 and 9, 2017, from 6:00 a.m. to 2:00 p.m..  An

23    MHCB is for inmates who are having serious mental health issues, including suicidality.  The

24    _____

25    incarcerated status, for the purpose of a thorough resolution of the issues before the Court, and in
      the interests of judicial economy, the Court has considered these filings.  The Court finds
26    Plaintiff's arguments that the reply briefs are "inadmissible" and that defense counsel is engaged
      in a conspiracy --- arguments that Plaintiff makes in these filings and elsewhere --- to be frivolous.
27    [2] In many of his filings, Plaintiff requests sanctions against defense counsel.  (*See*, *e.g.*, ECF Nos.
      149-54.)  These requests are DENIED because defense counsel did not engage in any conduct
28    warranting sanction.
      [3] Except where otherwise specified, the background facts are not in dispute.

      2

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    room Plaintiff was in had a window in the door that Rook could look through, and the lights were

2    kept on during her entire shift.  On both days, she logged her observations every 15 minutes, and

3    her log entries were tracked automatically so she could not change the times of her entries.  At

4    each 15-minute check, she confirmed he was alive and not harming himself.  Plaintiff states that

5    he purposely cut his little finger between 11:00 a.m. and 2:00 p.m. on May 8, and again the next

6    morning.  Rook's log entries indicate that she did not see him cut his finger.

7         "Psych techs" administered medication to Plaintiff twice on May 8 and twice on May 9.

8    Nurses checked Plaintiff's vital signs and assessed him three times per day, and he met with a

9    psychologist or psychiatrist every day.  At approximately noon on May 8, Plaintiff met with his

10   "Interdisciplinary Treatment Team" ("ITT"), which consisted of two psychologists, a psychiatrist,

11   a senior psychologist, a senior psychologist supervisor, a nurse, and a correctional counselor.

12   They addressed his mental health issues and an injury he had sustained on a finger on his left hand

13   on May 5, 2017.  Plaintiff originally reported that he injured it when he fell, but the medical staff

14   who treated him surmised that it was a self-inflicted wound from tying a string very tightly around

15   his finger.  He received stitches on May 5.  On May 8, the ITT nurse examined Plaintiff and found

16   the stitches missing.  Plaintiff asserted that the stitches had fallen out, and the nurse determined

17   that it was healing properly without the stitches.  The next morning, Plaintiff would not let a nurse

18   examine his injured finger, but later that day, he allowed a psychologist who was performing a

19   daily check to examine it.  The psychologist alerted medical personnel, and Plaintiff was taken

20   first to the prison medical center where staff found a portion of his finger necrotic, and later, at an

21   outside hospital, that portion of his finger was amputated.

22              2.    Analysis

23         Plaintiff claims that Rook failed to adequately protect him from harm from his

24   finger injury.  Deliberate indifference to a prisoner's serious medical needs violates the Eighth

25   Amendment's proscription against cruel and unusual punishment.  *Estelle v. Gamble*, 429 U.S. 97,

26   104 (1976).  A prison official is deliberately indifferent if he knows that a prisoner faces a

27   substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate

28   it.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of

3

1    facts from which the inference could be drawn that a substantial risk of serious harm exists," but

2    he "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but

3    was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.

4    *Gibson*, 290 F.3d at 1188. A claim of medical malpractice or negligence is insufficient to make

5    out a violation of the Eighth Amendment. *See Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.

6    2004).

7          The Court assumes for purposes of this discussion that Plaintiff's mental health issues and

8    his finger injury were both serious medical needs,  There is no evidence, however, that Rook was

9    deliberately indifferent to either condition. Plaintiff initially injured his little finger on May 5,

10   which was not on Rook's watch. The evidence that he further injured his finger on May 8 and

11   May 9, days she worked one of the observation shifts, does not establish that she was deliberately

12   indifferent because there is no evidence that she knew that he had done so. The evidence

13   establishes that she checked on him every 15 minutes and that she did not see him hurting his

14   finger. Plaintiff asserts that she must have seen it, but that assertion is simply speculative because

15   the evidence shows that she made her observations through a window in his door from which she

16   would not necessarily see him hurting his little finger. Given the evidence that there were nurses,

17   psychologists, psych techs, and psychiatrists who were visiting Plaintiff, examining him, and

18   treating him throughout each day, Rook's conducting her checks through the window was not

19   knowing disregard for Plaintiff's mental health condition either. Indeed, there is no evidence that

20   any of the other personnel who observed him conducted the checks any differently. At most,

21   Plaintiff's arguments might suggest negligence, but neither negligence nor gross negligence are

22   sufficient to establish an Eighth Amendment violation. *See Farmer*, 511 U.S. at 835-36 & n.4.

23   There is no evidence from which a reasonable fact-finder could conclude that was Rook knew that

24   Plaintiff further injured his finger or knew that the medical attention she and other personnel were

25   providing, even viewing all the evidence in a light most favorable to Plaintiff.

26         Plaintiff asserts that he told Rook that he was going to hurt himself on May 8, 2017, but

27   the evidence he relies upon does not support this assertion. He relies on Rook's log notes in which

28   she recorded that Plaintiff told her that she should take sick time and stay home. To begin with,

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1    this statement Plaintiff is too oblique for a reasonable fact-finder to find that it established that

2    Rook in fact knew that Plaintiff meant that he was going to injure himself.  Moreover, the log

3    notes show that she recorded this statement on May 9, *after* Plaintiff had already injured his finger

4    on May 5 and May 8.  Plaintiff also relies upon Rook's answer and a declaration by Defendant

5    Coburn stating that Plaintiff told Rook not to be there, but neither piece of evidence indicates that

6    Rook knew that meant that Plaintiff would hurt himself or specifies the day Plaintiff made that

7    statement to Rook.

8             Plaintiff argument that Defendants' evidence constitutes "perjury" because it is "false" is

9    frivolous.  Plaintiff also argues that he is still entitled to more discovery, but the materials he

10   wishes to discover are not relevant to Defendants' summary judgment motion.

11            For the foregoing reasons, there are no triable issues of fact that, if resolved in Plaintiff's

12   favor would establish that Rook was deliberately indifferent to Plaintiff's condition.  Thus, Rook

13   is entitled to summary judgment on Plaintiff's Eighth Amendment claim.[4]

14            B.       Defendant Basso

15                     1.       Background

16            Defendant Basso was a lieutenant at PBSP on May 10, 2017, where he was

17   assigned to investigate information that Defendant Dr. Hannah Bush, then an intern psychologist

18   at PBSP who had treated Plaintiff, had an "overfamiliar relationship" with Plaintiff.  Bush's then-

19   fiancé had found in Bush's possession letters written by Plaintiff to her, a photo of Plaintiff, and a

20   copy of Plaintiff's birth certificate.  Basso concluded that Bush had violated prison rules against

21   overfamiliar relationships with inmates, and the next day, he sent a report of his investigation to

22   the prison officials responsible for handling such findings.  Basso interviewed Plaintiff, who, in

23   contrast to his allegations here, repeatedly denied having written the letters or having a personal

24   relationship with Bush beyond her being his clinician.  Bush was placed on administrative leave

25

26   _____

27   [4] Because of this conclusion and the similar conclusion, below, regarding the claims against
     Basso, the Court need not reach their alternative arguments based upon exhaustion and qualified
     immunity.  Defendant Bush does not make a qualified immunity argument, nor has she filed an
28   answer to the operative complaint, i.e. the TAC.  Her answer to the Fourth Amended Complaint
     ("FAC") (ECF No. 113) is STRICKEN because Plaintiff was denied leave to file a FAC.

1    on May 12, 2017, and Basso instituted a "gate stop," which was an order to personnel at the PBSP

2    entrance not to admit her. Bush did not return to PBSP except for one occasion when she was

3    interviewed by an official in the prison's Internal Affairs Office, and she resigned from her

4    position with the California prisons.

5                          2.      Analysis

6           Plaintiff claims that Basso failed to prevent Bush from sexually harassing and

7    abusing him. The failure of prison officials to protect inmates from attacks by other inmates or

8    from dangerous conditions at the prison violates the Eighth Amendment when two requirements

9    are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official

10   is, subjectively, deliberately indifferent to inmate health or safety. *Farmer*, 511 U.S. at 834. A

11   prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate

12   health or safety by failing to take reasonable steps to abate it. *Id.* at 837. Allegations in a pro se

13   complaint sufficient to raise an inference that the named prison officials knew that plaintiff faced a

14   substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to

15   abate it state a failure-to-protect claim. *Hearns*, 413 F.3d at 1041-42.

16          Plaintiff claims that Basso failed to protect him from alleged sexual abuse by Bush. The

17   evidence establishes the contrary, however. It is undisputed that Basso immediately investigated

18   the evidence of an improper relationship, he sent his report to the appropriate authorities the next

19   day, and the day after that, Bush was placed on leave and never worked at the prison again. There

20   is no evidence that Basso failed to take reasonable steps to stop contact between Basso and

21   Plaintiff once Basso had information indicating that the relationship violated prison rules.

22   Plaintiff complains that Basso failed to prevent her from later visiting him at other prisons after he

23   was transferred. However, in addition to the evidence indicating that Plaintiff authorized and

24   requested such visits, there is no evidence that Basso knew about them. Moreover, Basso presents

25   uncontroverted evidence that he could not have done anything to stop such visits because he did

26   not have authority to issue stop-gate orders at other prisons or order officials at other prisons not to

27   allow Plaintiff to have Bush as a visitor. The record contains no evidence from which a

28   reasonable fact-finder could conclude that Basso failed to take any reasonable step to prevent a

United States District Court
Northern District of California

United States District Court
Northern District of California

1    substantial risk of harm of which Basso knew.  Accordingly, Basso is entitled to summary

2    judgment on Plaintiff's Eighth Amendment claim.

3              C.      Defendant Bush[5]

4                      1.      Background

5              Defendant Bush was a postdoctoral intern in psychology at PBSP.  She provided

6    therapy to Plaintiff from February to May 2017, when she resigned her position in response to

7    Basso's investigation and report that they had engaged in an "overfamiliar" relationship.  Plaintiff

8    had a history of cutting and self-harm before Bush met him, including slashing his lawyer's face

9    with a razor blade in court and cutting his own tongue at PBSP.  In response to efforts to transfer

10   him to another prison beginning in March 2017, Plaintiff expressed an intention to harm himself,

11   and Bush responded by making self-harm assessments, documenting his statements, and reporting

12   them to her supervisors.

13             According to Dr. Bush, they spoke romantically to each other during therapy sessions and

14   exchanged romantic letters, in violation of her ethical duties and professional responsibilities.

15   According to Plaintiff, they also spoke and wrote to each other in a sexually explicit manner and

16   engaged in sex acts during therapy, which Bush denies.  The therapy sessions occurred in her

17   office with Plaintiff in in a metal and plexiglass box; according to Plaintiff, the metal box

18   contained small holes that could fit a fingertip.  There was a window in the door to the office and

19   correctional officers checked on them every few minutes.  Plaintiff also states that Bush asked him

20   to cut off his finger, which Dr. Bush also denies; according to Bush, he stated that he would cut

21   off his finger if he was transferred to another prison.

22             After Bush resigned from the prisons and Plaintiff was transferred to another prison in

23

24   [5] Defendant Bush is proceeding pro se.  In light of her pro se status, the Court construes the
     signature under penalty of perjury at the bottom of the last pages of her summary judgment motion
25   and reply brief (see ECF Nos. 127 at 6, 160 at 8) as applying to the motion and reply brief.  Based
     on this construction, the Court considers facts set forth in her motion and reply to be evidence to
26   the extent that such facts are within her personal knowledge and are admissible as evidence. If
     Plaintiff did not intend to swear under penalty of perjury to the truth of the facts set forth in her
27   motion and reply brief that are within her personal knowledge, and only intended to swear to the
     truth of the facts in the proofs of service, she shall so notify the Court within seven days of the
28   date this order is filed, and the Court will reconsider the portion of this Order that addresses her
     motion for summary judgment.

7

1    May 2017, they continued to write each other letters, and she visited him in his new prison.  He

2    placed her on his visitor list at his new prison, and the visits were in the presence of correctional

3    officers.  Plaintiff asserts that they engaged in sexual conduct during those visits, which Bush

4    denies except for one occasion when he touched her breast over her clothes and one occasion

5    when he touched her clothed leg.  According to Bush, their relationship was romantic, and she

6    gave him money for commissary items.  In November 2018, she ended their relationship and

7    moved to Tennessee, where she remains.

8                    2.      Analysis

9            Plaintiff's claims that Bush violated his Eighth Amendment rights by sexually

10   abusing him, and that she violated his Eighth Amendment rights by failing to prevent --- and

11   indeed encouraging --- his self-inflicted finger injury.  The Court addresses each of these claims in

12   turn.

13           "Sexual harassment or abuse of an inmate by a corrections officer is a violation of the

14   Eighth Amendment."  *Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir. 2012) (citations omitted).

15   In evaluating a prisoner's claim of sexual harassment or abuse, courts consider whether "the

16   officials act[ed] with a sufficiently culpable state of mind" and if the alleged wrongdoing was

17   objectively "harmful enough" to establish a constitutional violation.  *Id.* (citing *Hudson v.*

18   *McMillian*, 503 U.S. 1, 8 (1992)).  The Eighth Amendment's prohibition against cruel and unusual

19   punishment necessarily excludes from constitutional recognition de minimis forms of force or

20   sexual harassment.  *See Hudson*, 503 U.S. at 9-10 (de minimis uses of force do not violate the

21   Eighth Amendment); *Watison v. Carter*, 668 F.3d 1108, 1112-14 (9th Cir. 2012) (no 8th

22   Amendment violation against officer who was alleged to have rubbed his thigh against plaintiff's

23   thigh while plaintiff was on toilet and to have begun smiling before leaving cell laughing);

24   *Berryhill v. Schriro*, 137 F.3d 1073, 1076 (8th Cir. 1998) (no 8th Amendment violation where

25   employees briefly touched inmate's buttocks with apparent intent to embarrass him, and touching

26   was unaccompanied by any sexual comments or banter).  Mere verbal sexual harassment that does

27   not involve sexual or physical contact does not necessarily amount to an Eighth Amendment

28   violation, moreover.  *See Austin v. Williams*, 367 F.3d 1167, 1171-72 (9th Cir. 2004).  A prisoner

United States District Court
Northern District of California

8

1    therefore must establish that the alleged sexual harassment was egregious, pervasive and/or

2    widespread in order to state a claim under the Eighth Amendment.  *See, e.g., Jordan*, 986 F.2d at

3    1525-31 (prison policy requiring male guards to conduct body searches on female prisoners);

4    *Watson v. Jones*, 980 F.2d 1165, 1165-66 (8th Cir. 1992) (correctional officer sexually harassed

5    two inmates on almost daily basis for two months by conducting deliberate examinations of

6    genitalia and anus).

7          Plaintiff claims that Bush sexually abused him while she was his therapist at PBSP and

8    also after she resigned from her job with the prison system, while he was at another prison.  To

9    state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured

10   by the Constitution or laws of the United States was violated and (2) that the alleged violation was

11   committed by a person acting under the color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

12   Any asserted abuse or harassment that Bush might have committed after she resigned from the

13   prison system (and employment with the State of California) cannot support a claim under Section

14   1983 because she was no longer acting under color of state law.  carrying out her job as a state

15   employee.  Generally, a public employee acts under color of state law while doing her job or

16   acting in her official capacity.  *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997).  The

17   evidence is uncontradicted that she resigned from her job with the prison system shortly after the

18   incident with Plaintiff's finger and his transfer to another prison.  After resigning from state

19   employment, she became a private citizen and as such, she did not act under color of state law

20   within the meaning of Section 1983.  *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (private

21   individual generally does not act under color of state law).[6]  Therefore, Plaintiff's Eighth

22

23   [6]There are certain instances in which a private individual may be found to be a state actor, and the
     various tests for such a finding have been summarized as follows:

24
             The public function test is satisfied only on a showing that the
25           function at issue is both traditionally and exclusively governmental.
             The close nexus and joint action tests may be satisfied where the
26           court finds a sufficiently close nexus between the state and the
             private actor so that the action of the latter may be fairly treated as
27           that of the State itself,  or where the State has so far insinuated into a
             position of interdependence with the [private party] that it was a
28           joint participant in the enterprise.  Governmental compulsion or
             coercion may exist where the State has exercised coercive power or

United States District Court
Northern District of California

1    Amendment claim against Bush may only be based upon her conduct while she was employed by

2    the state, i.e. the approximately three months between February and May 2017 when she was

3    treating him at PBSP.[7]

4           The evidence in the record precludes a reasonable fact-finder from finding that Bush

5    physically abused or harassed Plaintiff sexually.  Plaintiff states that they engaged in physical

6    sexual activity during their therapy sessions, and Bush states they did not.  A court does not make

7    credibility determinations at summary judgment, but "[w]hen opposing parties tell different

8    stories, one of which is blatantly contradicted by the record, so that no reasonable jury could

9    believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for

10   summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380-83 (2007).  Here, Plaintiff's account that

11   they engaged in physical sexual activity during their therapy sessions is blatantly contradicted by

12   the record.  The evidence is uncontradicted that the only time they were in physical proximity

13   while Bush was a state employee was during therapy sessions.  During those sessions, Plaintiff

14   was in a metal and plexiglass box which prevented physical contact, and they were under the

15   frequent observation of correctional officers to ensure that they hewed to prison rules prohibiting

16   sexual activity or overfamiliarity.  Plaintiff's allegation that they engaged in sexual activity

17   through the small holes in the metal is not reasonably believable given that they were in a

18   windowed office being observed by correctional officers, and there is no evidence of any that any

19   officers ever found them violating them violating prison rules forbidding such activity.  The

20   evidence regarding their therapy sessions preclude a reasonable fact-finder from believing

21   Plaintiff's allegations --- vigorously denied by Bush --- that they physically engaged in sexual

22   activity during their therapy sessions.  Consequently, there is no triable issue as to whether Bush

23   sexually abused or harassed him physically while she was a state employee

24

25                        has provided such significant encouragement, either overt or covert,
                          that the choice must in law be deemed to be that of the State.

26   *Rawson v. Recovery Innovations*, 975 F.3d 742, 748 (9th Cir. 2020) (citations and internal

27   quotation marks omitted).   There is no evidence that suggests any of these tests can be satisfied
     for Defendant Bush after she resigned from her position with the prison.

28   [7] Plaintiff's assertion of state law violations are not cognizable under Section 1983.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   What remains are Plaintiff's assertions of verbal sexual harassment, i.e. that she made

2   sexually explicit statements during therapy sessions and in their correspondence, while she was a

3   state employee.  Allegations of mere verbal harassment and abuse fail to state a claim cognizable

4   under 42 U.S.C. § 1983, however.  *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997)

5   *overruled in part on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008);

6   *Rutledge v. Arizona Bd. of Regents*, 660 F.2d 1345, 1353 (9th Cir. 1981); *see, e.g., Oltarzewski v.*

7   *Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (directing vulgar language at prisoner does not state

8   constitutional claim); *Burton v. Livingston*, 791 F.2d 97, 99 (8th Cir. 1986) ("mere words, without

9   more, do not invade a federally protected right"); *Ellingburg v. Lucas*, 518 F.2d 1196, 1197 (8th

10  Cir. 1975) (prisoner does not have cause of action under § 1983 for being called obscene name by

11  prison employee).  Even sexually harassing *behavior* has been found not to violate the Eighth

12  Amendment where it did not involve sexual or physical contact does not violate the violate the

13  Eighth Amendment.  *See Austin*, 367 F.3d at 1171-72 (upholding summary judgment dismissal of

14  8th Amendment claim where prison guard exposed himself to prisoner in elevated, glass-enclosed

15  control booth for 30-40 seconds).

16  Consequently, Plaintiff's Eighth Amendment claims cannot survive based solely on his

17  assertions of verbal sexual communication from Bush.  The Court notes further that Plaintiff's

18  evidence of that Bush talked and wrote to him in sexually explicit terms is uncorroborated.  He has

19  not produced any letters by her showing such language.  Bush concedes that their communication

20  was "romantic," but she denies his allegations that she made sexually explicit statements.  The

21  evidence that Bush provided extensive reports about their therapy sessions that concerned his

22  mental health, suicidality, and ideations of self-harm, supports her assertion that she was treating

23  him during those sessions and not engaged in sexual exchanges.  But even if this factual dispute is

24  resolved in Plaintiff's favor for purposes of summary judgment, as stated above, a reasonable fact-

25  finder could conclude at most only that Bush and Plaintiff said and wrote sexually explicit things

26  to each other while she was a state employee, which at worst would be verbal harassment.

27  When viewing the evidence in a light most favorable to Plaintiff, Bush was romantically

28  entangled with Plaintiff during the three months she was a state employee, and they exchanged

11

United States District Court
Northern District of California

1    sexually explicit letters and words during that time.  Though this was unethical and ill-advised

2    behavior by Bush, it was not a violation of Plaintiff's constitutional rights.  There are no triable

3    issues of fact that, if resolved in Plaintiff's favor, would rise to the level of sexual abuse or

4    harassment that violated the Eighth Amendment.

5         Plaintiff also claims that Bush failed to prevent him from injuring his finger, but the

6    evidence indicates the contrary.  She attempted to treat his mental health problems and prevent his

7    self-harm by completing self-harm assessments, documenting his threats of self-harm, and

8    reporting those threats to her supervisors.  Plaintiff presents no evidence that she did not do so or

9    that there were additional steps she could have taken to stop him from injuring his finger.  Plaintiff

10   alleges that Bush asked him to cut his finger off to prove that he loved her, which Bush

11   vehemently denies.  Plaintiff's allegations are not corroborated, and they are belied by the

12   evidence that Plaintiff had a history of cutting himself and others long before he met Bush.  There

13   is no triable factual issue as to whether Bush was deliberately indifferent to Plaintiff's mental

14   health condition that caused him to cut his own finger.

15        Plaintiff asserts that Bush committed a "crime" by destroying evidence, i.e. the letters from

16   him that were in her "lockbox."  There is no evidence that she destroyed these letters, and Plaintiff

17   admits that this assertion is "speculation" (ECF No. 156-1 at 7).  Indeed, as confirmed by Basso,

18   her ex-fiancé sent them to prison officials.  The letters are, moreover, irrelevant to Plaintiff's

19   claim.  He asserts that they show that they had physical sexual contact during therapy.  The letters

20   were written by Plaintiff, however, not by Bush, so they cannot demonstrate either that she

21   physically or verbally abused or harassed him.  At most, Plaintiff's letters would contain his

22   assertions of such activity, which are redundant to the assertions he already makes in his sworn

23   pleadings and declarations.[8]  Plaintiff also references the opinion of a psychologist in his

24   opposition, but he does not submit an affidavit or other sworn testimony by the psychologist.

25

26   [8] Plaintiff also complains that Bush did not give him the letters in discovery, but in addition to
     being irrelevant and redundant, the letters were no longer in her possession.  While her former
27   attorney implied that he read the letters or copies of them in the answer to the Second Amended
     Complaint, the discovery rules do not obligate Bush to attempt to locate the letters for Plaintiff
28   when Plaintiff could just as well have subpoenaed them from prison officials himself.

1   Therefore, his statements about this psychologist's opinion are inadmissible hearsay.

2                                              **CONCLUSION**

3              For the reasons set out above, the motions for summary judgment are GRANTED.

4   Plaintiff's motion "for evidence" (ECF No. 147) is DENIED, Plaintiff's motions for an extension

5   of time (ECF Nos. 148, 164) are GRANTED, Plaintiff's ex parte motion (ECF No. 172) is

6   DENIED, Defendants' motion to strike Plaintiff's "sur-replies" (ECF No. 177) is DENIED, and

7   Defendant Bush's Answer (ECF No. 113) to the Fourth Amended Complaint is STRICKEN.

8              The Clerk shall enter judgment and close the file.

9              **IT IS SO ORDERED.**

10  Dated: September 30, 2022

11

12                                                                    _____

13                                                                    JEFFREY S. WHITE
                                                                      United States District Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California