1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE NORTHERN DISTRICT OF CALIFORNIA

**FILED**

3                                               OCT 0 4 2022

4    DANIEL VERDUZCO,              CASE No. 4:19-CV-01440-JSW     CLERK, U.S. DISTRICT COURT
                                                          NORTHERN DISTRICT OF CALIFORNIA
5         PLAINTIFF

6    vs.                          NOTICE OF MOTION AND MOTION REQUESTING A RULING ON PENDING MOTION'S

7    MICKEY PRICE et.al.,          FOR CRIMINAL ACTIVITY DIRECTLY RELATED TO THE FACT'S /CIRCUMSTANCE'S AT

8         DEFENDANT(S)             ISSUE IN THIS CASE . NO RULING'S HAS RESULTED IN CONTINUED CRIMINAL AND

9                                  CONSTITUTIONAL VIOLATION'S .

10

11                     JUDGE : HON. JEFFERY S. WHITE

12                     MEMORANDUM OF POINTS AND AUTHORITIES

13                                ARGUMENT 1

14    PLAINTIFF HAS RECEIVED NO RULING ON MOTION'S FILED IDENTIFYING CRIMINAL ACTIVITY, BY DEFENDANT'S, DEFENSE

15    WITNESSES, AND COUNSEL BURANICH DIRECTLY RELATED TO THE FACT'S AND CIRCUMSTANCE'S AT ISSUE IN PLAINTIFF'S COMPLAINT

16

17    "COURT'S MUST, WHEN POSSIBLE, INTERPRET EACH WORD OF A LAW, SO AS TO GIVE IT MEANINGFUL EFFECT", SILVIERA vs. LOCKER, 312 F. 3d. 1083

18    (9 CIR. 2002) . IT'S A CRIME TO CONCEAL CRIMINAL ACTIVITY BY ANYONE, CAL. PEN. COD. §32 . IT'S A FEDERAL CRIME TO FILE FRAUDULENT RECORD'S

19    IN FEDERAL COURT, TIT. 18 U.S.C. §1001 (a)(3). IT'S A FEDERAL CRIME TO PROCURE PERJURY OR COMMIT PERJURY IN FEDERAL COURT, TIT. 18

20    U.S.C. §1621 ; §1622 ; §1623 .

21

22    TIT. 18 U.S.C. §1001 (a)(3), COVER'S WRITTEN FALSE STATEMENT'S AND APPLIES TO ANYONE WHO "MAKE'S OR USE'S ANY FALSE WRITING OR

23    DOCUMENT KNOWING THE SAME TO CONTAIN ANY MATERIALLY FALSE, FICTITIOUS, OR FRAUDULENT STATEMENT OR ENTRY". A STATEMENT IS

24    "FALSE" IF IT CONTAINS FACTUAL MISREPRESENTATIONS, U.S. Vs. STACKS, 821 F. 3d. 1083, 1044 (8th CIR. 2016). SEE ALSO : U.S. Vs. McKENNA, 327 F.

25    3d. 830, 838 (9th CIR. 2003).

26

27    AT ISSUE IN PLAINTIFF'S COMPLAINT ARE CLAIMS THAT (ISU) CRIME INVESTIGATOR LIEUTENANT R. BASSO AND WARDEN J. ROBERTSON FORMALLY

28    IDENTIFIED AS "HIRING AUTHORITY DOE 1" DISREGARDED DIRECT KNOWLEDGE OF A SUBTANTIAL RISK OF HARM TO PLAINTIFF'S HEALTH AND

1

1  SAFETY WHEN (ISU) LT. R. BASSO AND J. ROBERTSON WERE PROVIDED DIRECT EVIDENCE BY BUSH'S FIANCE ALLEN RESHA ON MAY 10, 2017

2  THAT (PBSP) PSYCHOLOGIST HANNAH E. BUSH WAS SEXUALLY ABUSING AN "EOP" PATIENT (PLAINTIFF) AT (PBSP) AND DIRECT EVIDENCE THAT

3  BUSH DID NOT REPORT AND MANIPULATED AN "EOP" PATIENT THAT SUFFERED FROM SUICIDE IDEATION TO MAIM HIS BODY BY CUTTING OFF HIS

4  FINGER FULL CIRCLE TO THE BONE RESULTING IN AMPUTATION (PLAINTIFF) AT (PBSP). PRISONERS IN "EOP" ARE VERY ILL AND CANNOT

5  FUNCTION IN GENERAL POPULATION", ARMSTRONG Vs. BROWN, 768 F. 3d.975 (9TH CIR.2014). "DISABLED INMATES REFER'S TO ALL ARMSTRONG

6  CLASS
   CALL MEMBERS, AND INMATES IN MENTAL HEALTH AT THE "EOP" LEVEL OF CARE." CAL.COD.REG. TIT.15 § 3486 (b)(13). INSTEAD OF REPORTING

7  BUSH TO LAW ENFORCEMENT AS MANDATORY REQUIRED BY STATE AND FEDERAL LAWS WITH OR WITHOUT BUSH'S RESIGNATION (ISU) CRIME

8  INVESTIGATOR "LT." R. BASSO AND WARDEN J. ROBERTSON TOOK ZERO REASONABLE ACTION AND ALLOWED BUSH'S ILLEGAL AND

9  UNCONSTITUTIONAL PREMEDITATED SEXUAL ASSULTS OF PLAINTIFF TO CONTINUE. "EVERY EMPLOYEE, REGARDLESS OF ASSIGNMENT IS

10 RESPONSIBLE FOR THE SAFE CUSTODY OF THE INMATE CONFINED IN THEIR INSTITUTION OF THE DEPT.", CAL.COD.REG. TIT.15 § 3271.

11

12 COUNSEL BURANICH AND DEFENSE WITNESS (PBSP) EMPLOYEE M. RUSSELL FILED ECF No. 106 FALSELY TESTIFYING THAT PLAINTIFF DID NOT   EXHAUST

13 ADMINISTRATIVE REMEDIES AGAINST R. BASSO OR "HIRING AUTHORITY DOE 1" I.e. "J. ROBERTSON. AS EVIDENCE THEY PRODUCED (4) PAGES OF

14 A (10) PAGE APPEAL RECORD, Log #PBSP-0-17-01532. THAT APPEAL RECORD WAS CRIMINALLY FALSIFIED AND FRAUDULENT IN VIOLATION OF CAL.

15 PEN. COD. §118.1 (a); P.C. §134 ; TIT. 18 U.S.C. §1001 (a)(1). BURANICH AND RUSSELL DISMANTLED THE APPEAL RECORD TO REMOVE THE CRIMINALLY

16 FRAUDULENT PORTIONS AND SUBMITTED A CRIMINALLY FALSIFIED RECORD THEY ALTERED AS A GENUINE AND TRUE COPY OF THAT DOCUMENT

17 KNOWING THE SAME TO CONTAIN CRIMINAL FRAUD. RUSSELL'S TESTIMONY IN ECF No. 106 WAS SWORN THAT FALSE TESTIMONY WAS PREPARED BY COUNSEL

18 BURANICH. DEFENDANTS PREVAILED IN ECF No. 106 DUE TO CRIMINALLY FRAUDULENT RECORDS KNOWINGLY FILED TO PREJUDICE PLAINTIFF

19 AND INTENTIONALLY DEFRAUD A FEDERAL COURT.

20

21 PLAINTIFF FILED ECF No's : 149, 152, 153, AND 154 RESPECTIVELY ON OR BEFORE APRIL 27, 2022 REPORTING THIS CRIMINAL FRAUD TO

22 PREJUDICE PLAINTIFF FROM LAWFULLY AMENDING HIS COMPLAINT. PLAINTIFF HAS RECEIVED NO RULINGS ON ECF No's 149, 152, 153,

23 AND 154.

24

25 ON JUNE 10, 2022 PLAINTIFF DISCOVERED EVIDENCE THAT (ISU) CRIME INVESTIGATOR R. BASSO, J. ROBERTSON, AND (CDCR) EMPLOYEE(S)

26 VIOLATED (CDCR) POLICY, COMMITTED A MULTITUTE OF FELONIES BY FALSIFYING INVESTIGATION RECORDS TO OBSTRUCT JUSTICE AND

27 CONCEAL CRIMINAL AND CONSTITUTIONAL VIOLATION'S AT ISSUE IN THIS CASE. COUNSEL BURANICH AND M. RUSSELL REFUSED TO IDENTIFY

28 HIRING AUTHORITY DOE 1 IN ECF No's 106 AND No. 126, THERE'S A CLEAR EXPLAINAION FOR THAT ; ITS "J. ROBERTSON.

1  J. ROBERTSON WAS THE REVIEWING AUTHORITY THAT OVERSAW AND FINALIZED THE 2017 AND 2019 CRIMINAL SEXUAL ABUSE

2  INVESTIGATION'S AGAINST THE SAME EMPLOYEE, (PBSP) PSYCHOLOGIST HANNAH E. BUSH AND AGAINST HIMSELF (J. ROBERTSON).

3  THAT'S A BLATANT VIOLATION OF (CDCR) POLICY, CAL. COD. REG. TIT. 15 § 3084.7 (A)(1)(A). SEE EX. C-D16. BECAUSE J. ROBERTSON WAS

4  THE REVIEWING AUTHORITY FOR THE 2017 INVESTIGATION, ROBERTSON WAS PROHIBITED BY LAW FROM ACTING IN THAT CAPACITY DURING THE

5  2019 INVESTIGATION. FURTHERMORE, THE 2019 INVESTIGATION WAS AGAINST BUSH, BASSO, AND ROBERTSON.

6

7  J. ROBERTSON OVERSAW AND FINALIZED THE 2019 INVESTIGATION INTO BUSH'S, BASSO'S, AND ROBERTSON'S OWN CRIMINAL CONDUCT

8  AND CONSTITUTIONAL VIOLATION'S AGAINST PLAINTIFF. THEN, J. ROBERTSON AUTHORIZED THE CRIMINALLY FALSIFIED NOV. 05, 2019 MEMO

9  THAT CLEARED HIMSELF, BUSH, AND BASSO OF NOT VIOLATING A SINGLE LAW OR (CDCR) POLICY, SEE EX. A-D01; A-D02. THE MEMO ALONE

10  VIOLATED CCR. TIT. 15 § 3084.7 (D)(1)(A) AND IS CRIMINAL, CAL. PEN. COD. § 118.1 (A); P.C. § 134; TIT. 18 U.S.C. §1001 (A)(1).

11  PROSECUTORIAL STATUTE OF LIMITATION'S ARE STAYED UNTIL DATE OF DISCOVERY, CAL. PEN. COD. § 803 (C)(1)(2).

12

13  ON JAN. 19, 2022 M. RUSSELL AUTHENTICATED THE NOV. 05, 2019 MEMO, VERIFYING THAT DESPITE BEING SIGNED BY K. ROYAL IT WAS

14  AUTHORIZED BY "J. ROBERTSON," SEE EX. A-D02. YET A MERE (8) DAYS LATER ON JAN. 27, 2022 IN SWORN TESTIMONY FOR ECF

15  No. 106, M. RUSSELL CANNOT IDENTIFY ROBERTSON ALTHOUGH SHORTLY BEFORE HIS TESTIMONY RUSSELL AUTHENTICATED THE MEMO

16  AS BEING AUTHORIZED BY ROBERTSON. RUSSELL KNEW THE MEMO WAS PART OF THE APPEAL RECORD BUT WITHHELD THE NOV. 05,

17  2019 MEMO FROM THE APPEAL RECORD RUSSELL AND COUNSEL BURANICH FILED WITH THE COURT JAN. 31, 2022 IN ECF No. 106,

18  BURANICH AND RUSSELL KNEW IT WAS FRAUDULENT.  • DIRECT EVIDENCE OF A CONSPIRACY MUST BE EVIDENCE THAT'S EXPLICIT AND

19  REQUIRE'S NO INFERENCES TO ESTABLISH THE PROPOSITION OR CONCLUSION BEING ASSERTED", CITY OF TUOLUMNE Vs. SONORA

20  COMMUNITY HOSPITAL, 236 F. 3d 1148 1153 (9 CIR. 2001).  THE UNDISPUTABLE FACTS IS EVIDENCE OF A CIVIL AND CRIMINAL

21  CONSPIRACY. (ISU) AND (CDCR) EMPLOYEE(S) ARE NO STRANGER'S TO CORRUPTION, SEE EX. A-D03; A-D04. AN INDEPENDENT REVIEW

22  BY THE INSPECTOR GENERAL CALLED (CDCR's) PROCESS TO REPORT MISCONDUCT A "FAILURE" THAT "REMAIN'S BROKEN", SEE EX. A-D05.

23                                ARGUMENT II

24       PLAINTIFF HAS RECEIVED NO RULING FOR A (30) DAY EXTENSION TO OPPOSE DEFENDANT'S IDENTICAL SUCCESSIVE MOT.

25  TO STAY ALL DISCOVERY PROCEEDING'S TO DENY PLAINTIFF RELEVANT MATERIAL EVIDENCE AT SUMMARY JUDGEMENT

26

27  PLAINTIFF FILED INDEPENDANT RULE 37, F.R.C.P. MOTION'S TO COMPEL DISCOVERY ON MARCH 26, 2020, ECF No. 36 AND AUGUST 25,

28  2020, ECF No. 42.  BOTH'S MOTION'S WERE DENIED BY THE COURT, ECF No.'s 37 AND No. 46. ON NOV. 01, 2020 PLAINTIFF SERVED

1  DEFENDANTS A RULE 37. F.R.C.P. REQUEST TO MEET AND CONFER REQUESTING THE LETTER'S DISCOVERED INSIDE BUSH'S LOCK BOX

2  MAY 10, 2017 AND GIVEN TO (ISU) R. BASSO MAY 11, 2017.  DEFENDANTS DID NOT MEET AND CONFER AND TO PREVENT PLAINTIFF

3  FROM SEEKING RELIEF ON A RULE 37. F.R.C.P. MOT. TO COMPEL, DEFENDANTS MOVED TO STAY ALL DISCOVERY PROCEEDINGS PENDING

4  THE QUESTION OF QUALIFIED IMMUNITY, ECF No. 48.   PLAINTIFF FILED AN OPPOSITION, ECF No. 49.  ON MARCH 25, 2021 DEFENDANTS

5  MOT. TO STAY DISCOVERY WAS GRANTED, ECF No. 54.

6

7  THE QUESTION OF QUALIFIED IMMUNITY WAS EFFECTIVELY RESOLVED BY THE COURT IN THIS CASE SEP. 23, 2021 ; DEFENDANTS ARE NOT

8  ENTITLED TO QUALIFIED IMMUNITY IN THIS CASE, AND THE STAY ON DISCOVERY WAS LIFTED, ECF No. 75 .   IN A CASE REMINISCENT OF

9  HISTORY REPEATING ITSELF, DEFENDANTS SERVED PLAINTIFF UNTRUTHFUL DISCOVERY RESPONSE'S, IGNORED PLAINTIFF'S RULE 37,

10  F.R.C.P. REQUEST TO MEET AND CONFER REGARDING THE LETTER'S FROM BUSH'S LOCK BOX AND GIVEN TO R. BASSO MAY 11, 2017.

11  TO PREVENT PLAINTIFF FROM SEEKING RELIEF ON A MOT. TO COMPEL UNDER RULE 37, F.R.C.P., ON MARCH 30, 2022 DEFENDANTS

12  MOVED ON A SUCCESSIVE MOT. TO STAY ALL DISCOVERY PENDING THE QUESTION OF QUALIFIED IMMUNITY, ECF No. 141.  THAT REQUEST

13  WAS GRANTED IN (8) DAYS ON APRIL 07, 2022, ECF No. 144, WITHOUT AFFORDING PLAINTIFF A MEANINGFUL OPPORTUNITY TO FILE

14  AN OPPOSITION.   " OFFICIALS CLAIM OF QUALIFIED IMMUNITY WILL BE DEFEATED IF CONDUCT WAS UNLAWFUL IN LIGHT OF PRE-

15  - EXISTING LAW", SCHWENK Vs. HARTFORD, 204 F. 3d. 1189 (9th CIR. 2000).  "COURT'S MUST, WHEN POSSIBLE INTERPRET EACH WORD OF

16  A LAW, SO AS TO GIVE IT MEANINGFUL EFFECT", SILVEIRA Vs. LOCKER, 312 F. 3d. 1083 (9th CIR. 2002). THE QUESTION OF QUALIFIED

17  IMMUNITY WAS RESOLVED IN THIS CASE SEP. 23, 2021 IN ECF No. 75, DEFEATING A SUCCESSIVE QUALIFIED IMMUNITY DEFENSE.  THE

18  DISTRICT COURT HAD A SUA SPONTE DUTY TO DENY ECF No. 141 AS THE COURT PREVIOUSLY EXCERCISED THAT DISCRETION ON

19  JANUARY 29, 2020 IN ECF No. 30 , WHEN IT DENIED DEFENDANTS MOTION TO STAY DISCOVERY AS MOOT.

20

21  ON OR BEFORE APRIL 14, 2022  PLAINTIFF FILED ECF No. 148 REQUESTING (30) DAYS TO OPPOSE ECF No. 141, A SUCCESSIVE MOTION TO

22  STAY ALL DISCOVERY. PLAINTIFF ARGUED THAT EIGHTH AMENDMENT'S TO INMATE HEALTH AND SAFETY IS A CLEARLY ESTABLISHED

23  CONSTITUTIONAL RIGHT.   PLAINTIFF HAS RECEIVED NO RULING ON ECF No. 148 .

24                        ARGUMENT III

25      PLAINTIFF HAS RECEIVED NO RULING TO PROCEED AS DOE IN FEDERAL COURT LIKE FEMALE VICTIMS OF SEXUAL ABUSE

26

27  ON FEB. 11, 2022 PLAINTIFF SOUGHT PERMISSION TO PROCEED AS A DOE TO PROTECT HIS PRIVACY, ECF No. 116. THE COURT DENIED

28  THAT REQUEST FEB. 17, 2022 STIPULATING THAT THE LAW CITED BY PLAINTIFF HAS NO AUTHORITY IN FEDERAL COURT, ECF No. 119.

1  ON APRIL 06, 2022 PLAINTIFF RE-NEWED HIS MOTION TO PROCEED AS DOE CITING THE EQUAL PROTECTION OF THE 14TH AMENDMENT,

2  ARGUING THAT PURSUANT TO TITLE 28 CODE OF FEDERAL REGULATION'S §115.82 PLAINTIFF IS FEDERALLY RECOGNIZED AS A "VICTIM"

3  OF SEXUAL ABUSE. PLAINTIFF PROVIDED THE DISTRICT COURT A ACTIVE CALIFORNIA CASE IN CIVIL FEDERAL COURT WHERE FEMALE

4  VICTIM'S SEXUALLY ABUSED BY A (CDCR) EMPLOYEE WERE ALLOWED TO PROCEED AS DOE'S IN STATE COURT AND CIVIL FEDERAL COURT.

5  JANE DOE 2 Vs. OFFICER S. MERRILL, U.S.C.D. CA.5: 21-00771-DMG-RAO.

6

7  "THE PRINCIPAL'S OF EQUAL PROTECTION'S APPLIE'S TO ACTIONS IN CIVIL AS WELL AS CRIMINAL ACTIONS", EDMONSON Vs. LEESVILLE

8  CONCRETE Co. INC., 86 D F. 2d 1308 (5TH CIR. 1988). "COURT'S MUST, WHEN POSSIBLE, INTERPRET EACH WORD OF A LAW, SO AS TO GIVE IT

9  MEANINGFUL EFFECT," SILVEIRA Vs. LOCKER, 312 F. 2d 1083 (9TH CIR. 2002). MALE VICTIMS OF SEXUAL ABUSE BY A (CDCR) EMPLOYEE

10  SHOULD BE TREATED NO DIFFERENT THAN THEIR FEMALE COUNTERPARTS. PLAINTIFF HAS RECEIVED NO RULING ON ECF No. 145.

11                                      ARGUMENT IV

12       PLAINTIFF HAS RECEIVED NO RULING ON MOTION'S FOR SPOLIATION OF EVIDENCE BY DEFENDANT BUSH OR COUNSEL

13            ANDREW K. JACOBSON DESPITE A COURT ORDER AND DUTY TO PRESERVE

14

15  PLAINTIFF FEARED SPOLIATION OF EVIDENCE IN THIS LITIGATION AND FILED A PROACTIVE MOTION TO PREVENT THE DESTRUCTION OF ANY

16  EVIDENCE, ECF No. 103. THE COURT DENIED THAT MOTION, DEEMING IT AS UNNECESSARY, STIPULATING THAT ANY PARTY WHOM DESTROY'S

17  DOCUMENT'S WILL FACE SANCTION'S, ECF No. 111. DESPITE THE COURT'S DIRECTIVE IN ECF No. 111 AND A DUTY TO PRESERVE BUSH OR HER

18  COUNSEL DESTROYED MATERIAL EVIDENCE IN THIS CASE. "LOST OR DESTROYED EVIDENCE IS RELEVANT IF A REASONABLE TIER OF FACT

19  COULD CONCLUDE THAT THE LOST EVIDENCE WOULD HAVE SUPPORTED THE CLAIM'S OR DEFENSE'S OF THE PART THAT SOUGHT IT",

20  VICTOR STANLEY Vs. CREATIVE PIP. INC., 269 F.R.D. 497 531 (D. Md. 2010). ON OR BEFORE APRIL 20, 2022 PLAINTIFF FILED ECF No.'s

21  147 AND 150 RESPECTIVELY SEEKING THIS EVIDENCE AND RULE 11 (b), F.R.C.P. SANCTION'S FOR IT'S DESTRUCTION IN BAD FAITH.

22  "BAD FAITH CONDUCT MEANS DESTRUCTION FOR THE PURPOSE'S OF HIDING ADVERSE INFORMATION", MATHIS Vs. JOHN MORDEN BUICK

23  INC., 136 F. 3d 1153, 1155 (7TH CIR. 1998). PLAINTIFF HAS RECEIVED NO RULING'S ON ECF No.'s 147 AND 150.

24                                      ARGUMENT V

25       PLAINTIFF HAS RECEIVED NO RULING ON HIS RULE 37, F.R.C.P. MOTION TO COMPEL DISCOVERY

26

27  DEFENDANT BUSH AND COUNSEL ON RECORD FOR BUSH AT THE TIME DID NOT RESPOND TO PLAINTIFF'S MULTIPLE DISCOVERY REQUEST'S

28  IN NON-COMPLIANCE WITH THE F.R.C.P., AND IGNORED PLAINTIFF'S RULE 37, F.R.C.P. REQUEST TO MEET AND CONFER.

1   ONCE ALLOWABLE TIME TO MEET AND CONFER EXPIRED PLAINTIFF MOVED ON A RULE 37, F.R.C.P. MOTION TO COMPEL, ECF No. 129. ON MARCH 14,

2   2022 THE COURT DENIED THAT MOTION AND DIRECTED BUSH TO COMPLY WITH PLAINTIFF'S DISCOVERY REQUEST ON OR BEFORE APRIL 05, 2022.

3   THE COURT DIRECTED PLAINTIFF TO RESUBMIT HIS MOTION TO COMPEL BY APRIL 19, 2022 IF BUSH DID NOT COMPLY WITH THE APRIL 05, 2022

4   DEADLINE IMPOSED BY THE COURT, ECF No. 138.  BUSH DISOBEYED ECF No. 138.  AS DIRECTED BY THE COURT PLAINTIFF RESUBMITTED HIS RULE 37,

5   F.R.C.P. MOT. TO COMPEL ON OR BEFORE APRIL 18, 2022, ECF No. 151.  "THE F.R.C.P. STRONGLY FAVOR DISCOVERY WHENEVER POSSIBLE".

6   FARNSWORTH Vs. PROCTOR AND GAMBLE Co., 758 F 2d. 1545, 1547 (11ᵀᴴ CIR. 1985).  "MATERIALS RELEVANT TO ANY CLAIM OR DEFENSE ARE DISCOVERABLE

7   UNDER F.R.C.P. RULE 26 (b)(1)", GOV'T OF GHANA Vs. PROENERGY SERVS. LLC, 677 F. 3d. 340 (8ᵀᴴ CIR 2012).  "COURTS MUST, WHEN POSSIBLE, INTERPRET

8   EACH WORD OF A LAW, SO AS TO GIVE IT MEANINGFUL EFFECT." SILVEIRA Vs. LOCKER. (9ᵀᴴ CIR. 2002).  PLAINTIFF HAS RECEIVED NO RULING ON ECF No. 151.

9                                                          ARGUMENT VI

10          NO RULINGS HAS RESULTED IN CONTINUED CRIMINAL AND CONSTITUTIONAL VIOLATIONS AT ISSUE IN PLAINTIFF COMPLAINT

11

12   STAFF MISCONDUCT IS ANY VIOLATION OF LAW OR POLICY", CAL.COD.REG.TIT.15 § 3483 (a)(14).  "THE DEPT. "SHALL" ENSURE COMPLAINTS OF STAFF

13   MISCONDUCT ARE THOROUGHLY INVESTIGATED, DISCIPLINE IMPOSED OR REFERAL FOR CRIMINAL PROSECUTION", CAL.COD.REG.TIT.15 § 3486 (a)(b)(3),

14   SEE EX. B-006.  "SHALL" MEANS MANDATORY, CAL.COD.REG. TIT.15 § 3000.5 (c).  "ANY PERSON CAN SUBMIT A COMPLAINT WHEN THEY BELIEVE

15   DEPT. STAFF ENGAGED IN BEHAVIOR THAT RESULTED IN VIOLATION OF LAW OR POLICY", CAL.COD.REG.TIT.15 § 3486 (a)(1), SEE EX.B-006.  "EACH

16   EMPLOYEE "SHALL" REPORT MISCONDUCT OR ILLEGAL ACTIVITY BY STAFF", (DOM) CH.3 ART.14 § 31140.5, SEE EX. B-007.  " (CDCR) HAS TO INITIATE

17   CRIMINAL INVESTIGATION'S FOR CRIMINAL ACTIVITY BY STAFF AND "SHALL" REPORT CRIMINAL CONDUCT TO PROSECUTORS ", (DOM) CH.3 ART. 14 §

18   31140.20, SEE EX. B-008.  "ANY ACT(s) OR COORDINATED EFFORT TO PREVENT THE REPORTING OF MISCONDUCT IS GROUNDS FOR DISMISSAL".

19   (DOM) CH.3 ART. 22 § 33030.19 (E)(3)(4)(5), SEE EX. B-009.  "FALSIFICATION OF STATEMENT'S IN OFFICIAL REPORTS/RECORD'S IS GROUND'S FOR

20   DISMISSAL", (DOM) CH.3 ART. 22 § 33030.19 (E)(3), SEE EX. B-010.  "THE ONLY PENALTY FOR FALSE TESTIMONY UNDER OATH IS DISMISSAL",

21   (DOM) CH.3 ART. 22 § 33030.19 (E)(10), SEE EX. B-010.  "STATUTE OF LIMITATION'S TO IMPOSE EMPLOYEE DISCIPLINE IS ONE YEAR FROM DATE OF

22   DISCOVERY BY THE DEPT.", (DOM) CH.3 ART. 22 § 33030.12.2.  "SINCE 2005 EACH YEAR EVERY (CDCR) EMPLOYEE IS E-MAILED THE "CODE

23   OF CONDUCT" AND "EMPLOYEE DISCIPLINE MATRIX" TO ENSURE NOTICE AND CONSISTENCY STATEWIDE", CAL.PEN.COD. § 5058.4 (a)(d)(1)-(5),

24   SEE EX. B-011.  THE INVESTIGATION ASSIGNMENT INDEX REQUIRES COMPLAINTS FOR "DISHONESTY" OR "PREVENTING THE REPORTING OF

25   MISCONDUCT" i.e. "THE CODE OF SILENCE " TO BE ASSIGNED AND INVESTIGATED BY INTERNAL AFFAIRS" AT A RANK NO LOWER THAN A

26   LIEUTENANT, SEE EX.B-012; B-013.  "IT'S A CRIME TO CONCEAL CRIMINAL ACTIVITY BY ANYONE", CAL.PEN.COD. § 32, SEE EX.B-014.  "ZERO

27   TOLERANCE RE: "CODE OF SILENCE", SEE EX. B-015.  "STATE REGULATION'S, INCLUDING PRISON REGULATION'S, HAVE THE FORCE OF LAW",

28   MADRID Vs. GOMES, 889 F. SUPP. 1146 1127 f.n. 219 (N.D. CAL. 1995).

1  ON JUNE 10, 2022 PLAINTIFF ACQUIRED EVIDENCE THAT WARDEN J. ROBERTSON WAS THE REVIEWING AUTHORITY THAT FINALIZED BOTH THE 2017

2  AND 2019 CRIMINAL SEXUAL ABUSE INVESTIGATION'S AGAINST (PBSP) PSYCHOLOGIST HANNAH E. BUSH, THIS ALONE VIOLATES CCR. TIT. 15 §

3  3084.7 (d)(1)(A), SEE EX. C-016 .  SINCE THE 2019 INVESTIGATION WAS AGAINST BUSH, R. BASSO, AND J. ROBERTSON, ROBERTSON'S

4  INVOLVEMENT AS THE REVIEWING AUTHORITY FOR THE 2019 CRIMINAL INVESTIGATION WAS TO FURTHER A CIVIL AND CRIMINAL CONSPIRACY IN

5  AN EFFORT TO OBSTRUCT JUSTICE, CONCEAL ROBERTSON'S, BASSO'S, BUSH'S CRIMINAL CONDUCT AND CONSTITUTIONAL VIOLATION'S, DEPRIVE

6  PLAINTIFF OF HIS CONSTITUTIONAL RIGHT'S, CONCEAL THE DEPRIVATION OF THOSE RIGHT'S VIA CRIMINAL ACTIVITY UNDER COLOR OF LAW TO

7  PREVENT THE REPORTING OF MISCONDUCT AND CHILL PLAINTIFFS FIRST AMENDMENT RIGHT .  " THE LOST OF FIRST AMENDMENT FREEDOM'S,

8  FOR EVEN MINIMAL PERIODS OF TIME, UNQUESTIONABLY CONSTITUTES IRREPARABLE INJURY". ELROD VS. BURN'S, 427 U.S. 347, 373, S.CT.

9  2673, 49 L. Ed. 2d 547 (1976).

10

11  " DIRECT EVIDENCE OF A CONSPIRACY MUST BE EVIDENCE THAT'S EXPLICIT AND REQUIRES NO INFERENCES TO ESTABLISH THE PROPOSITION OR

12  CONCLUSION BEING ASSERTED". CITY OF TUOLMNE VS. SONORA COMMUNITY HOSPITAL, 236 F. 3d. 1148, 1153 (9TH CIR. 2001) .

13  " TO ESTABLISH A PRIMA FACIE CASE OF CIVIL CONSPIRACY, A PLAINTIFF MUST SHOW 1) AN EXPRESS OR IMPLIED AGREEMENT AMONG

14  DEFENDANTS TO DEPRIVE HIM OF A CONSTITUTIONAL RIGHT ; AND 2) ACTUAL DEPRIVATION OF THOSE RIGHT'S IN THE FORM OF OVERT ACTS IN

15  THE FURTHERANCE OF THE AGREEMENT". SCHERER VS. BALEMA, 840 F. 2d. 437 1442 (7TH CIR. 1988).

16

17  CRIME AFTER CRIME HAS BEEN COMMITTED TO PREVENT PLAINTIFF FROM HAVING KNOWLEDGE OF THE CIVIL AND CRIMINAL CONSPIRACY IN THIS

18  CASE, INCLUDING FEDERAL CRIMES BY COUNSEL BURRAICH WHOM FILED FRAUDULENT EVIDENCE WITH M. RUSSELL AND PREPARED AT LEAST

19  (9) DECLARATION'S THAT PLAINTIFF CAN NOW UNEQUIVOCALLY PROVE WERE OUTRIGHT PERJURED AND FALSE . AFTER RETAINING EVIDENCE

20  OF A ACTIVE CIVIL AND CRIMINAL CONSPIRACY ON JUNE 10, 2022, IN COMPLIANCE WITH (CDCR) REGULATION'S PLAINTIFF FILED A COMPLAINT

21  JUNE 30, 2022 AND WAS ISSUED LOG # 277062, SEE EX. C-017 THRO C-020.  " PLAINTIFF'S COMPLAINT SATISFIED CCR. TIT. 15 § 3483 (a)

22  (14) THAT DEFINES MISCONDUCT AS " ANY VIOLATION OF LAW, POLICY, OR BLATANT FAILURE TO FOLLOW RULES". PLAINTIFF'S COMPLAINT SATISFIED

23  CCR. TIT. 15 § 3486 (a)(1), SEE EX. B-006 . PLAINTIFF'S COMPLAINT SATISFIED CCR. TIT. 15 § 3486 (a)(b)(3), TO BE THOROUGHLY INVESTIGATED,

24  DISCIPLINE IMPOSED, AND REFERED FOR PROSECUTION, SEE EX. B-006 . PLAINTIFF'S COMPLAINT SATISFIED THE (IAI) INDEX TO BE SENT TO

25  INTERNAL AFFAIR'S, SEE EX. B-013 .  DISCIPLINARY OR PROSECUTORIAL STATUTE OF LIMITATIONS HAVE NOT EXPIRED FOR IDENTIFIED AND

26  UNIDENTIFIED STAFF IN COMPLAINT LOG # 277062, HOWEVER, TO CONCEAL CRIMINAL ACTIVITY, PREVENT AN INTERNAL AFFAIRS

27  INVESTIGATION . A CORRUPT UNIDENTIFIED (CDCR) EMPLOYEE AT (CDCR) HEADQUARTER'S CRIMINALLY FALSIFIED THE GRIEVANCE

28  DECISION ON JULY 14, 2022 TO REJECT PLAINTIFF'S COMPLAINT BY FASELY DOCUMENTING THAT A APPEAL RESPONSE IS PENDING

1  ON THIS MATTER, SEE EX. C-D21 ; C-D22 .  THIS OF COURSE WAS FALSE AND IMPOSSIBLE CONSIDERING THAT PLAINTIFF ONLY LEARNED

2  OF THE CONSPIRACY JUNE 10, 2022 AND FILED LOG # 277062 ON JUNE 30, 2022 .  A GRIEVANCE DECISION IS AN OFFICIAL RECORD.

3  "EMPLOYEE'S CANNOT FALSIFY OFFICIAL RECORDS /REPORT'S," EX. B-D10 .  FURTHERMORE, IT'S A CRIME TO CONCEAL CRIMES, CAL. PEN.

4  COD. § 32. SEE EX. B-D14 .  SEE ALSO ; TIT. 18 U.S.C. § 1001 (a)(1) .  (CDCR) STAFF ARE STILL ENGAGING IN CRIMINAL ACTIVITY TO

5  DENY PLAINTIFF EQUAL PROTECTION OF LAW AS A SEXUAL ABUSE VICTIM, DENY HIM A FAIR AND UNBIASED APPEAL REMEDY,

6  PREVENT AN INTERNAL AFFAIRS INVESTIGATION, COMPLETELY FREEZING PLAINTIFF'S FIRST AMENDMENT RIGHTS AS A FORM OF

7  COORDINATED RETALIATION FOR REPORTING SEXUAL ASSULTS BUSH COMMITTED, AND FOR REPORTING A MULTITUDE OF CRIMINAL

8  AND CONSTITUTIONAL VIOLATIONS BY STAFF DIRECTLY AT ISSUE .  THIS IS A BLATANT COORDINATED EFFORT AND AGREEMENT TO

9  CONSPIRE AGAINST PLAINTIFF THROUGH OVERT CRIMINAL ACTS TO CONCEAL THE DEPRIVATION OF CONSTITUTIONAL RIGHTS DIRECTLY

10  RELATED TO THE FACTS AND CIRCUMSTANCES AT ISSUE IN THIS CASE .

11

12  "PRISON OFFICAL'S MUST NOT RETALIATE AGAINST PRISONERS FOR EXERCISING HIS/HER CONSTITUTIONAL RIGHTS", FOGLE Vs. PIERSON,

13  435 F. 3d. 1252 (10TH CIR. 2006) .  " CHANGES IN CIRCUMSTANCES THAT UNDERLIE THE SUBSTANCE IN AN EXISTING LAWSUIT DO NOT

14  REQUIRE EXHAUSTION", MAUSSAZADEH Vs. TEXAS DEPT. OF CRIM. JUSTICE, 702 F. 3d. 781 (5TH CIR. 2012) .  THE ATTORNEY GENERAL NOR

15  CDCR OFFICIALS CAN CONCEAL CRIMINAL ACTIVITY IN THE FURTHERANCE OF A CONSPIRACY .  PLAINTIFF WILL PURSUE CRIMINAL

16  REMEDIES ON A STATE WRIT OF MANDATE .

17                              CONCLUSION

18  RENDER RULING'S ON ALL PENDING MOTION'S REFERENCED HEREIN TO STOP THE CONTINUED CRIMINAL AND CONSTITUTIONAL

19  VIOLATION'S IN THE FURTHERANCE OF A CIVIL AND CRIMINAL CONSPIRACY WITH A DIRECT NEXUS TO THE FACTS AND

20  CIRCUMSTANCE'S AT ISSUE IN THIS CASE .  GRANT PLAINTIFF LEAVE TO AMEND HIS COMPLAINT, LIFT THE STAY ON DISCOVERY,

21  GRANT PLAINTIFF DOE STATUS UNDER THE EQUAL PROTECTION CLAUSE .

22                              VERIFICATION

23  I DECLARE UNDER UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE .

24  IF CALLED UPON TO DO SO I CAN COMPETENTLY TESTIFY TO THESE MATTER'S .  THIS DECLARATION WAS EXECUTED ON THE 25TH

25  DAY OF SEPTEMBER 25, 2022 AT STOCKTON CALIFORNIA .

26

27

28

# EXHIBIT COVER PAGE

**A**

EXHIBIT

Description of this Exhibit: LOG No. PBSP-D-19-01532 MEMO DATED 11/05/2019
GA 22 RESPONSE BY M. RUSSELL DATED 01/19/2022
CORRUPTION BY (ISU) WITHIN (CDCR)
(OIG) FINDINGS RE: REPORTING OF MISCONDUCT WITHIN (CDCR)

Number of pages to this Exhibit: _____ **5** _____ pages.

JURISDICTION: (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☑ United States District Court
☐ State Circuit Court
☐ United States Supreme Court
☐ Grand Jury

Template Date 4/4/2012
State of California

Attachment E-4
Department of Corrections and Rehabilitation

# Memorandum

Date   :   November 5, 2019

To     :   Verduzco, T45537
           CHCF

(A-2-A)

Subject:   STAFF COMPLAINT RESPONSE - APPEAL # PBSP-O-19-01532

Allegations raised in your complaint dated *July 8, 2019,* have been evaluated. Our review indicates that there was no violation of California Department of Corrections and Rehabilitation policy. Accordingly, no further action will be taken with regard to your complaint.

**This response does not limit or restrict the availability of further relief via the inmate appeals process.** If you have not already done so, and you wish to further appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Secretary's Level of Review.

With the rendering of a decision at the Third Level of Review your administrative remedies will be considered exhausted.

*Appeals Coordinator: Please print and sign below:*

Name: _____   Signature: _____   Date: _1/5/15_
Appeals Coordinator

EXHIBIT A-001

EXHIBIT A-002

STATE OF CALIFORNIA
GA-0022 (Rev 2013-10)

# INMATE REQUEST FOR INTERVIEW

DEPARTMENT OF CORRECTIONS & REHABILIATION

| DATE | TO | FROM (LAST NAME) | CDCR NUMBER |
|---|---|---|---|
| JAN, 11, 2022 | (PBSP) APPEALS COORDINATOR | VERDUZCO, D | T-45537 |

| HOUSING | BED NUMBER | WORK ASSIGNMENT | JOB NUMBER | |
|---|---|---|---|---|
| (CHCF) B6A | 126 | | FROM | TO |

| OTHER ASSIGNMENT (SCHOOL, THERAPY, ETC.) | ASSIGNMENT HOURS | |
|---|---|---|
| | FROM | TO |

**Clearly state your reason for requesting this interview.**
You will be called in for interview in the near future if the matter cannot be handled by correspondence.

(PBSP) (AC), THE ENCLOSED MEMORANDUM DATED 11-05-2019 IS SIGNED BY (PBSP) (AC) K.ROYAL,
HOWEVER, K.ROYAL TOLD ME HE IS NOT THE EMPLOYEE THAT DETERMINED THAT NO VIOLATION OF CDCR POLICY
OCCURED RE: PBSP-0-19-01532. PLEASE IDENTIFY THE WARDEN/HIRING AUTHORITY THAT DETERMINED NO
VIOLATION OF CDCR POLICY AND AUTHORIZED THIS MEMO DATED 11-05-19, THANK YOU. THIS IS NOT CONFIDENTIAL.

Do NOT write below this line if more space is required write on back

| INTERVIEWED BY | DATE |
|---|---|
| M RUSSELL - CGFF | 1-19-2022 |

DISPOSITION
Warden J. Robertson

# Investigations Into the Deaths of Several Prisoners and Two Guards Reveal Rampant Corruption, Cover-ups in California Prison

### by Keith Sanders

WHEN BRANT DANIEL FOUND HIMSELF in one of California's most violent and corrupt prisons, the California State Prison (CSP) in Sacramento, known as New Folsom, he knew he was in trouble. Daniel, a member of the Aryan Brotherhood prison gang, potentially faces the death penalty for the October 2016 murder of fellow prisoner Zachary Scott at the Salinas Valley State prison, so he is no stranger to trouble or violence. But Daniel's attorneys, John Balazs and Timothy Warriner, are asking a federal court to move him to a different prison for his protection. From whom? Guards employed by the California Department of Corrections and Rehabilitation (CDCR), who have allegedly harassed him and even planted a knife in his cell.

In filings entered on December 28, 2021, the lawyers also claim that two guards wrote replies to notes from Daniel, admitting they could hear his privileged phone conversations with counsel. It is the latest attempt in a year to move Daniel out of CSP-Sacramento since their January 2021 court filings claiming that "rogue" guards "have planted weapons and drugs in inmates' cells in order to obtain more overtime, have spread false rumors and relayed confidential information from inmates' files to other inmates in violation of CDCR policy, and on at least two occasions have been directly involved in the killing of a CSP-Sacramento inmate."

With a staff of 2,500, CSP-Sacramento houses almost 2,200 prisoners. A security-level 4 facility, the highest in the California prison classification system, it is home to the state's most violent and dangerous prisoners, as well as patients so mentally ill that they are too dangerous to be housed in mental hospitals.

Daniel is one of several Aryan Brotherhood members locked up at the prison facing charges stemming from a June 2019 racketeering indictment against the group. But prisoner assaults on guards are also rampant, where prison staff allegedly face "gassing"—when prisoners throw feces and urine on them—almost daily.

As an anonymous guard told the *Sacramento Bee*, "[Y]ou have to be hard. You have to know when to flip that switch and get crazy. Because if you don't fight that crazy individual with a crazy mentality, you're going to lose."

Yet much of that "crazy mentality" at New Folsom by guards is also corrupt and illegal.

In their court filing, Daniel's attorneys also revealed that a New Folsom guard provided much of the information for their suit. That was Sergeant Kevin Steele, who began his career as a prison guard in 2001 at San Quentin State Prison. In 2008, he was promoted to sergeant and transferred to New Folsom where he eventually joined the Investigative Services Unit (ISU) in 2015.

As a member of ISU, a detective unit inside the prison, the 56-year-old sergeant acted as the unit's criminal prosecution coordinator and facilitated investigations involving outside agencies like the FBI, local law enforcement, and the Sacramento County District Attorney's office. Steele also trained in-coming guards on how to collect evidence and conduct investigations.

As an investigator, Steele had expertise and knowledge about prisoner investigations. And what he saw in the course of his work caused him concern, sufficiently so to write several memos to CSP-Sacramento Warden Jeffery Lynch and the state corrections secretary detailing how other ISU member were falsifying documents, planting evidence on prisoners, and even conspiring to murder prisoners. Guards who spoke anonymously with the *Sacramento Bee* described Steele as a "meticulous professional."

In one memo, Steele wrote that at "every single juncture where I discovered something that resembled corruption, wrongdoing, exploitation, fraudulency and/or breeches of trust, I ALWAYS alerted supervisory staff and institutional leadership, as that is what I thought was the desire of both the administrative staff and [CDCR]," and adding "it would appear that is NOT the desire of either entity."

Tragically, Steele committed suicide on August 20, 2021. Why? Once other guards

and members of ISU discovered that one of their own was a "snitch," they harassed Steele mercilessly, and even mistreated and threatened him. Eventually, Steele was forced to take a leave of absence in February 2021 and, amazingly, on February 12, 2021, he was barred from returning to the prison.

CDCR's press secretary, Dana Simas, refuted Steele's claims of harassment and noted in an email that the investigator was "banned due to a misconduct investigation," though she declined to clarify the nature of the misconduct, adding only that it was not the "result of whistleblower retaliation."

Yet Steele was the second ISU whistleblower to die after being mistreated and harassed. In 2020, guard Valentino Rodriguez, 30, was found dead of an accidental fentanyl overdose at his home. Relatives and friends reported that he was "throwing up all the time at work and hyperventilating" because he was suffering from PTSD and depression. He gained 45 pounds and began seeing a therapist. Rodriguez took a leave of absence on January 28, 2020, and died soon after.

The relatives of Rodriguez filed a complaint with the Office of Internal Affairs alleging racial and anti-gay slurs from his fellow guards had contributed to Rodriguez's decline in mental health. After an initial investigation, an internal affairs officer concluded that a "reasonable belief was established to allege serious misconduct occurred." Ten guards were disciplined for Rodriguez's hazing and mistreatment, and CDCR moved on December 28, 2021, to fire two more. None was identified.

The corrupt and abusive culture inside New Folsom reflects a larger trend for the health of prison guards. In 2017, a study by the University of California, Berkeley, found that guards are "exposed to violence at rates comparable to military veterans, and that the job is linked to health problems, depression and suicidal thoughts." According to the California Correctional Peace Officers Association, nine guards committed suicide in 2020.

Yet the mental health of guards should not detract from the misconduct they direct

toward prisoners at New Folsom. Steele was threatened primarily because he blew the whistle on corrupt guards and cover-ups involving two prisoner deaths where guards played a role.

Attorneys for one of the dead men, Luis Giovanny Aguilar, 29, claim in a civil rights lawsuit that prison guards "via their willful indifference to prevent and their actual facilitation of the murder of Mr. Aguilar conspired to cause" the prisoner's death in December 2019.

Three other prisoners, Dion Green, Anthony Rodriguez and Cody Taylor, were restrained with metal cuffs in chairs along with Aguilar. Video of the incident shows that after Taylor and Rodriguez slipped free from their restraints they went to the second floor to grab a weapon. When they returned, they attacked Aguilar, who remained cuffed to his chair.

Ultimately, Taylor pleaded no contest and was sentenced in May 2021 to 100 years to life, plus two years. Charges were still pending against Rodriguez and Green on December 10, 2021, when Aguilar's mother filed a federal lawsuit alleging that video evidence showed guards let the prisoners who killed him make a "practice run" a week before the murder. Although CDCR insists that no staff was involved with Aguilar's murder, the incident took place in full view of guards on the first floor.

Steele had also provided information to an attorney for 29-year-old Milton Beverly, who was found dead in his cell in 2016. Disputing prison staff's claim that Beverly had hanged himself alone in his cell, Steele told the lawyer, Steven Glickman, that another prisoner had confessed, both in writing and on video, to killing Beverly in a fight over the telephone. Yet when Glickman reviewed the documents relating to his client's alleged suicide the "confessions were missing," he noted. Steele notified Warden Lynch of the missing documents and indicated to Glickman that he would publicly testify to their existence, but his subsequent suicide prevented that from happening.

In November 2020, guards Ashley Marie Aurich, 32, and Arturo Pacheco, 38, were indicted after the death of an unnamed 65-year-old prisoner in 2016. Aurich was charged with Falsification of Records in a Federal Investigation (18 U.S.C. §1519) and pleaded guilty in January 2021. Pacheco's indictment listed two counts under the same charge and two more counts of Deprivation of Rights Under Color of Law (18 U.S.C. §242), for which he is still awaiting trial.

The charges stemmed from an incident in which Aurich, Pacheco, and at least three other guards were escorting a handcuffed prisoner from one cell to another. According to Pacheco's indictment, he released his grip on the prisoner's arm during the escort and then wrapped his arms around the prisoner's legs, causing him to land face first on the floor. The prisoner was taken to the hospital where he died two days later. The indictment also alleged that Pacheco falsely stated he used "immediate force" because he was trying to stop the prisoner "from self-harming himself and causing serious bodily injury or death to himself."

As for Aurich, her indictment alleged she "knowingly and falsely stated that the only witnesses to the assault...were Correctional Officer 1, Correctional Officer 3, and Correctional Officer 4, intentionally concealing the presence of Correctional Officer 2," which was Pacheco.

To date, the corruption and mistreatment of both staff and prisoners at New Folsom continue unabated. Officials are quick to insulate many of the guards from administrative or legal consequences for their actions by claiming no wrongdoing or putting the blame on prisoners. Moreover, promises of investigating misconduct by guards are minimized by having investigations performed by ISU, the very same unit that saw two of its members hazed, threatened and harassed to the point of death for uncovering the misconduct of others in the unit. This is nothing new and has been the norm in CDCR for at least a half century if not longer. ◼

Sources: *AP News, Sacramento Bee*

You've used up your 3 free articles for this month. **Subscribe today** (/subscribe/digital/).

# ❋ (/subscribe/digital/) Inspector General Calls California Prison Reform Efforts a $10 Million Failure

Loaded on JUNE 1, 2021 by Matthew Clarke (/news/author/matthew-clarke/) published in Prison Legal News June, 2021 (/news/issue/32/6/), page 40

Filed under: Prison Reform (/search/?selected_facets=tags:Prison%20Reform), Cost of Prison Systems (/search/?selected_facets=tags:Cost%20of%20Prison%20Systems). Location: California (/search/?selected_facets=locations:1476).

by Matt Clarke

In February 2021, the California Office of the Inspector General (OIG) issued its finding that a $10 million effort by the state prison system—to address deficiencies that OIG previously uncovered in reporting staff misconduct—had "failed" and that the process "remains broken."

The report documents the latest round ...

**Full article and associated cases available to subscribers.**

As a digital subscriber to Prison Legal News, you can access full text and downloads for this and other premium content.

Subscribe today (/subscribe/digital/)

Already a subscriber?  Login (/users/login/)

EXHIBIT "B"

CCR.TIT.15 § 3486 ; [DOM] CH. 3 ART. 14 § 31140.5 ; [DOM] CH.3 ART. 14 § 31140.20 ;
[DOM] CH. 3 ART. 22 § 3303D.19 (B)(3)(4)(5) ; [DOM] CH.3 ART. 22 § 3303D.19 (E)(7)(10) ;
CAL.PEN.COD. §5058.4 (A)(d)(1)-(5) ; INVESTIGATION ASSIGNMENT INDEX ; CAL.PEN.COD. § 32 ;
(CDCR) TOLERANCE RE: "CODE OF SILENCE".


10  PAGE'S

TEXT OF PROPOSED REGULATIONS

In the following text, <u>underline</u> indicates newly adopted text.

California Code of Regulations, Title 15, Division 3, Adult Institutions, Programs and Parole.

Subchapter 5.1. Inmate and Parolee Programs

New Article 1.5 is adopted.

<u>Article 1.5 Staff Misconduct Complaints</u>

<u>3486.  Allegations of Staff Misconduct Toward an Incarcerated Person or Parolee.</u>

<u>(a)      Right to submit complaint alleging staff misconduct:</u>

<u>(1)      Any person can submit a complaint of staff misconduct when they believe departmental staff have engaged in behavior that resulted in a violation of law, policy, regulation, or procedure, or an ethical or professional standard.</u>

<u>(A)      CDCR Form 602-1, Grievance, (Rev. 01/22), which is incorporated by reference, may be submitted by inmates and parolees pursuant to sections 3482(a)(1) and 3482(a)(2) respectively.</u>

<u>(B)      CDCR Form 602-HC, Health Care Grievance, (Rev. 10/18), which is incorporated by reference, may be submitted by inmates and parolees pursuant to section 3999.226(a).</u>

<u>(C)      CDCR Form 1824, Reasonable Accommodation Request, (Rev. 09/17), which is incorporated by reference, may be submitted by inmates and parolees pursuant to sections 3482(a)(1) and 3482(a)(2) respectively.</u>

<u>(D)      Citizens complaints shall be submitted in writing pursuant to section 3417.</u>

<u>(2)      Staff shall not retaliate against a complainant or witness for submitting a complaint or reporting staff misconduct.</u>

<u>(3)      The department shall ensure all complaints of staff misconduct are properly documented, objectively reviewed, thoroughly investigated, and discipline imposed or referred for criminal prosecution, when warranted, as provided in this Article, and Article 2 of Subchapter 5.</u>

<u>(b)      Definitions - For purposes of this article, the following definitions shall apply:</u>

<u>(1)      "Allegation Decision Index" (ADI) refers to the index, incorporated by reference in this Article, which identifies the criteria utilized by the Centralized Screening Team to determine whether a complaint should be referred to the Allegation Investigation Unit (AIU) for investigation.</u>

<u>(2)      "Allegation Inquiry" refers to the process of gathering relevant facts and evidence by a Local Designated Investigator (LDI) concerning a complaint that involves an allegation of staff misconduct.</u>

<u>(3)      "Allegation Inquiry Report" refers to the confidential report prepared by an LDI following an Allegation Inquiry.</u>

<u>(4)      "Allegation Investigation Unit" (AIU) refers to the unit within the Office of Internal Affairs (OIA) that conducts investigations into complaints alleging misconduct toward</u>

- Notifying each complainant, including citizen, inmate, or employee complainants, in writing, of the finding on the original complaint within thirty (30) days of the determination of the disposition of the investigation regarding the original complaint. The Hiring Authority shall not notify the complainant of specific investigative findings, but shall make a separate finding on the original complaint. At no time should the specifics related to any personnel action be discussed with the complainant in the matter. The notification of the finding on the complaint shall be limited to whether the original complaint is sustained, not sustained, exonerated, or unfounded;

- Coordinating and consulting with the Vertical Advocate for designated cases and the SAIG for cases monitored by the BIR before making investigative findings or disciplinary determinations and prior to approving any settlement agreements.

### 31140.4.11 Supervisors and Managers

Each supervisor and manager shall be responsible for referring alleged misconduct and requests for investigation or adverse action to the Hiring Authority immediately following discovery of facts which may constitute misconduct.

### 31140.4.12 Locally Designated Investigators

Locally designated investigators shall be responsible for the following:

- Conducting investigations, as assigned by OIA regional offices, in a manner that provides a complete and thorough presentation of all facts regarding the allegation or complaint;

- Maintaining integrity and the confidentiality of the investigative process, unless prior approval to discuss a case with the Hiring Authority is obtained through the SAC;

- Cooperating with and providing continual real-time consultation among OIA, the Vertical Advocate for designated cases, and the BIR for cases the BIR is monitoring;

- Identifying issues related to allegations of employee misconduct and assisting the Hiring Authority, Vertical Advocate for designated cases, and the SAIG for cases monitored by the BIR;

- Updating case activity in CMS.

### 31140.4.13 Vertical Advocate

The Vertical Advocate shall be responsible for the following:

- Coordinating with the assigned investigator for designated cases for the duration of an investigation and evaluating completed investigations for legal sufficiency to prosecute an adminstrative action;

- Monitoring and coordinating with the ERO/Disciplinary Officer the adverse action process for all designated cases, from the onset of an investigation, including calculation of statute of limitations expiration dates;

- Providing legal consultation for all designated cases to the assigned investigator, including developing the investigative plan, assisting with preparation of investigative interviews, and attending investigative interviews, as appropriate, to assess witness demeanor and credibility;

- Providing legal consultation to the Hiring Authority on all designated cases and coordinating with the SAIG for cases monitored by the BIR.

### 31140.4.14 Office of Civil Rights

The OCR may initiate investigations when an employee files a complaint with the OCR regarding discrimination, harassment, or EEO related retaliation. Following completion of OCR's evaluation, and if the OCR determines that an OIA investigation may be necessary, the OCR shall forward a copy of the intake document and all related information to the OIA for investigation consideration.

### 31140.5 Employee Expectations & Reporting

Each employee, regardless of classification or rank, shall adhere to the Department's Employee Performance Standards as defined in DOM, Section 3, Article 22, Subsection 33030.3. Each employee shall report misconduct or any unethical or illegal activity in a timely manner. Failure to report employee misconduct or any unethical or illegal activity in an investigation or allegation inquiry shall be grounds for corrective action, disciplinary action, or both. Employees shall not make false statements when questioned, interviewed, or in reports submitted.

### 31140.5.1 Employee Duty to Cooperate

Each employee of the CDCR is required to comply and cooperate as follows:

- If requested to make a statement in any official internal investigation conducted by the Department, employees shall make full, complete,

and truthful statements. Failure or refusal to make statements or making false statements during Department Internal Affairs investigations may result in disciplinary action.

- Employees shall not take any action which would interfere with, delay, distort, or unduly influence any official investigation conducted by the Department or any other government agency. Any employee who knowingly gives false evidence, withholds evidence, or interferes in any way during such an investigation, or requests or encourages another to do so, may be subject to disciplinary action.

- Employees have a duty to cooperate with investigators of the Department and with officials from other law enforcement agencies who are conducting a criminal investigation. Employees shall make full, complete, and truthful statements. Failure to cooperate may result in disciplinary action.

### 31140.6 Authority to Conduct Investigations

Pursuant to Government Code Section 11182, the Secretary of the Department delegates the authority to initiate and conduct investigations to the Assistant Secretary, OIA.

### 31140.7 Requirements for Hiring Internal Affairs Investigators

Investigators shall be hired in accordance with Penal Code Sections 6065 (b)(1) and 6126.1(c).

### 31140.8 Required Training

All Internal Affairs investigators shall complete investigation training and be certified as mandated by Penal Code Section 6126.1 and the OIA Investigation Training Requirements. In addition, Internal Affairs investigators shall complete advanced investigative training as outlined in the OIA Investigation Training Requirements.

### 31140.9 Filing an Allegation of Employee Misconduct with a Hiring Authority

Information regarding alleged employee misconduct shall be reported promptly by staff to a supervisor or other appropriate departmental, governmental, or law enforcement entity. If information is reported verbally to a supervisor, the staff person shall also submit a written report to the supervisor. The supervisor shall prepare a separate written report regarding the allegation(s) and shall submit his/her report and the staff person's report to the Hiring Authority or to the Hiring Authority's supervisor if the allegation(s) are against the Hiring Authority. Such reports shall include all pertinent information concerning the allegation(s), the timeline, and the source(s) of the information.

Any allegation of misconduct which is believed by staff to constitute an emergency shall be reported immediately to a supervisor, locally designated investigators, or the OIA. In the event of such an emergency, staff shall follow-up with the written report within one (1) day of learning of the information. Some instances that constitute an emergency are as follows:

- Possible loss of life or serious bodily injury;

- Serious breach of facility security;

- Further aggravation of a potentially dangerous situation;

- Activities which seriously compromise or jeopardize an investigation;

- An illegal activity which may occur imminently.

### 31140.10 Reporting Misconduct and Protecting Employees from Retaliation

To encourage and protect employees that confront and report serious misconduct, the Department has strengthened its policies and procedures to provide additional protections beyond those included in the California Whistleblower Protection Act (Government Code section 8547 et seq.) and other California protective statutes. This reporting of misconduct process and the protection offered by the Department are detailed in the Department's "Policy and Procedure for Reporting Serious Misconduct and Protecting Employees from Retaliation." The procedures may be obtained by contacting the OIA.

### 31140.11 Inmate, Ward, or Parolee Complaints Against Staff

All inmate, ward, or parolee complaints against staff shall be processed in accordance with DOM, Section 54100.

### 31140.12 Complaints by Members of the Public Against Department Employees

Pursuant to Penal Code Section 832.5, it is the policy of the Department, as an employer of peace officers, to have a procedure for investigating a complaint by a member of the public against its peace officers.

EXHIBIT B-007

designated investigators are not authorized to initiate investigations or conduct interviews without approval of OIA.

Some misconduct should be addressed by taking corrective action, such as training, policy or procedure change, or other progressive discipline measures.

- **Further Investigation or Inquiry Required:**

  Some requests for investigation may require the Hiring Authority to provide additional information or investigation. When the CIU determines insufficient information or documentation was submitted with the CDC Form 989, CIU staff shall contact the Hiring Authority or designee and request additional information. The requested information and/or documentation shall be provided to the CIU within ten (10) calendar days, if the information is available.

- **No action:**

  Some requests may not warrant any corrective or adverse action.

For requests returned without investigation, a memorandum shall be completed by the SAC and forwarded to the Hiring Authority. The memorandum shall include a detailed explanation for the action taken and shall direct the Hiring Authority, as appropriate, to determine the appropriate disciplinary action while taking into account any prior misconduct by the employee or corrective action imposed. A copy of the memorandum shall be retained in the CIU file. In addition to responding in writing, the SAC shall be available to the Hiring Authority to discuss the decision for the return of the investigation. The Hiring Authority may appeal the decision in writing to the Chief, OIA, Headquarters Operations, promptly following issuance of a returned case memorandum.

### 31140.17     Case Assignment

When a request for investigation is accepted, the case shall be assigned to an OIA regional office (Headquarters, Northern, Central, or Southern). If the case is assigned by the OIA region to a locally designated investigator, the case shall receive a case number and be supervised by a Senior Special Agent from the OIA regional office. The locally designated investigator shall complete the case and return it to the Senior Special Agent for final review before it is noted as complete in the CMS.

### 31140.18     Logging Allegations

In accordance with Penal Code Section 6065(b)(2), all Internal Affairs allegations or complaints, whether investigated or not, shall be logged into CMS and numbered sequentially on an annual basis. The log shall specify, but not be limited to, the following information: The sequential number of the allegation or complaint, the date of receipt of the allegation or complaint, the location or facility to which the allegation or complaint pertains, and the disposition of all actions taken, including any final action taken. The log shall be made available to the Inspector General.

### 31140.19     Case Management System

The OIA Information Technology personnel shall maintain, control, and secure an electronic CMS for purposes of security and efficiency and to allow real-time documentation of case activity by investigators, Vertical Advocates, and ERO/Disciplinary Officers. In addition to capturing information during the course of an investigation, the CMS will capture post-investigation information, such as case findings, disciplinary action, and legal action.

Users include OIA Central Intake staff; OIA staff, Vertical Advocates, BIR, Hiring Authorities, ERO/Disciplinary Officers, and designated local Internal Affairs investigators. The OIA may, at its discretion, grant CMS access to other Department staff having significant roles in the employee disciplinary process. For purposes of security and investigative integrity, the OIA shall also have the sole authority to grant or remove access to the CMS for any CDCR employee.

The OIA shall create and maintain a user manual for the CMS that shall provide detailed operating procedures for OIA employees and other authorized CMS users.

- **New Cases**

  As investigative requests are evaluated by the CIU, the request/case shall be opened in CMS and key information, such as allegation, case type, and initial case decisions shall be recorded in CMS. If an investigation is opened, case assignment information shall be entered in CMS.

- **Ongoing Cases**

  Investigators and authorized users shall use CMS to record case activity, monitor case progress, and provide a real-time record of

decisions. Other authorized users may use CMS to monitor case activity or record pertinent actions, activities, and decisions.

- **Closing Cases**

  Investigators, Vertical Advocates, and Hiring Authorities shall refer to and comply with DOM, Section 3, Article 22 regarding investigative review and case closure.

### 31140.20     Criminal Investigations

A criminal investigation should be conducted for an allegation of employee misconduct when there is reason to believe the employee has committed a violation of criminal law and an outside law enforcement agency is not conducting an investigation. The CIU shall identify and document the potential criminal violation and the facts and evidence represented in support of the complaint. The CIU shall refer the case to a SAC for the respective region who will assign the criminal investigation to a Senior Special Agent for supervision.

Upon case initiation, the Senior Special Agent or the Special Agent shall confer with the Vertical Advocate, for designated cases, and the SAIG for cases monitored by the BIR. Upon completion of the investigation, if probable cause exists to believe that a crime has been committed, the investigation shall be referred to the appropriate agency for prosecution.

Criminal investigations shall be conducted in compliance with all laws, regulations, and departmental policies.

### 31140.21     Administrative Investigations

An administrative investigation shall be conducted into allegations of staff misconduct that are violations of policy, procedure, or law. Administrative investigations may be conducted concurrently or subsequent to a criminal investigation. The determination of whether to conduct the administrative investigation concurrently with the criminal investigation shall be made by the Senior Special Agent in consultation with the Vertical Advocate and BIR in conjunction with the prosecuting agency. In addition, the prosecuting agency shall be consulted prior to any compelled subject interview when criminal charges or court proceedings are pending. If the prosecuting agency requests the Internal Affairs investigation be delayed pending criminal prosecution, that request shall be documented in the case file and in CMS. An administrative investigation, adverse action, or both, shall not be delayed unless it clearly would jeopardize the criminal prosecution.

In an administrative investigation, an employee does not have a right to refuse to answer questions likely to lead to the discovery of relevant evidence as determined by the investigating entity. When the employee is compelled to answer these questions, the answers cannot be used against the employee in a criminal or state court civil proceeding subject to certain exceptions. In an administrative investigation of a peace officer involving possible criminal conduct, the peace officer shall be advised of his/her constitutional rights before questioning, followed by the "Lybarger warning" if he/she refuses to answer the questions on the grounds the answer may be self-incriminating. [Refer to Government Code Section 3303 (f) and (h).]

### 31140.22     Retaliation Investigations

OIA is responsible for investigating retaliation as defined under the California Whistleblower Protection Act and other California retaliation protective statutes, except for retaliation associated with EEO complaints and processes which fall under the responsibility of the OCR. EEO related retaliation complaints that are received by OIA shall normally be forwarded to OCR for review and consideration.

Upon receipt, the OIA CIU shall conduct a review and analysis of all non-EEO related retaliation complaints. Each complaint shall be evaluated on its merits to determine if a prima facie case of retaliation can be established.

In order for a complaint or referral for investigation to establish a prima facie case of retaliation and be accepted by OIA, the following must be established:

- That an employee directly or indirectly used or attempted to use official authority or influence for the purposes of intimidating, threatening, coercing, commanding, or attempting to intimidate, threaten, coerce, or command for the purpose of interfering with the reporting of an improper governmental activity or making a protected disclosure; or

- That the employee: a) made a disclosure to a manager or supervisor of what is believed to be an improper governmental activity; b) was or is cooperating in an investigation of improper governmental activity; or c) refused to obey an illegal order or directive; and

- The alleged retaliator was aware of the protected activity, protected disclosures, or failure to obey an illegal order; and

EXHIBIT B-008

| The base penalty is bolded and underlined. | |
| --- | --- |
| 3) Abuse of sick leave.<br>(Gov. Code § 19572 c, Inefficiency)<br>(Gov. Code § 19572 d, Inexcusable Neglect of Duty)<br>(Gov. Code § 19572 f, Dishonesty) | 1 **2** 3 |
| **B. CODE OF SILENCE OR RETALIATION** | PENALTY |
| 1) Intentional failure to report misconduct by another employee.<br>(Gov. Code § 19572 c, Inefficiency)<br>(Gov. Code § 19572 d, Inexcusable Neglect of Duty)<br>(Gov. Code § 19572 e, Insubordination)<br>(Gov. Code § 19572 f, Dishonesty)<br>(Gov. Code § 19572 o, Willful disobedience)<br>(Gov. Code § 19572 t, Other Failure of Good Behavior) | 4 **5** 6 7 8 9 |
| **B. CODE OF SILENCE OR RETALIATION (CONTINUED)** | PENALTY |
| 2) Intimidation, threats, or coercion that could interfere with an employee's right to report misconduct or an act of retaliation for reporting misconduct.<br>(Gov. Code § 19572 m, Discourteous Treatment of Public/Other Employees)<br>(Gov. Code § 19572 t, Other Failure of Good Behavior)<br>(Gov. Code § 19572 x, Retaliation) | 4 5 **6** 7 8 9 |
| 3) Making false or intentionally misleading statements during a criminal or administrative investigation or inquiry by any agency.<br>(Gov. Code § 19572 c, Inefficiency)<br>(Gov. Code § 19572 d, Inexcusable Neglect of Duty)<br>(Gov. Code § 19572 e, Insubordination)<br>(Gov. Code § 19572 f, Dishonesty)<br>(Gov. Code § 19572 o, Willful disobedience)<br>(Gov. Code § 19572 t, Other Failure of Good Behavior) | 7 8 **9** |
| 4) Any independent act(s) which prevents or interferes with the reporting of misconduct.<br>(Gov. Code § 19572 c, Inefficiency)<br>(Gov. Code § 19572 d, Inexcusable Neglect of Duty)<br>(Gov. Code § 19572 e, Insubordination)<br>(Gov. Code § 19572 f, Dishonesty)<br>(Gov. Code § 19572 o, Willful disobedience)<br>(Gov. Code § 19572 t, Other Failure of Good Behavior) | 7 8 **9** |
| 5) Any involvement in a coordinated effort with other employees to prohibit the reporting of misconduct.<br>(Gov. Code § 19572 c, Inefficiency)<br>(Gov. Code § 19572 d, Inexcusable Neglect of Duty)<br>(Gov. Code § 19572 e, Insubordination)<br>(Gov. Code § 19572 f, Dishonesty)<br>(Gov. Code § 19572 o, Willful disobedience)<br>(Gov. Code § 19572 t, Other Failure of Good Behavior) | 7 8 **9** |
| **C. CONTROLLED SUBSTANCES** | PENALTY |
| 1) Use or possession of controlled substances on or off duty, unless medically prescribed.<br>(Gov. Code § 19572 c, Inefficiency)<br>(Gov. Code § 19572 d, Inexcusable Neglect of Duty)<br>(Gov. Code § 19572 i, Addiction to the Use of a Controlled Substance)<br>(Gov. Code § 19572 r, Violation of Gov. Code § 19990)<br>(Gov. Code § 19572 t, Other Failure of Good Behavior) | 4 5 6 7 8 **9** |
| 2) Sale of illegal drugs or narcotics.<br>(Gov. Code § 19572 i, Addiction to the Use of a Controlled Substance)<br>(Gov. Code § 19572 r, Violation of Gov. Code § 19990)<br>(Gov. Code § 19572 t, Other Failure of Good Behavior) | **9** |
| **D. CONDUCT or INEFFICIENCY** | PENALTY |
| 1) Discourtesy toward inmates, other employees, or the public.<br>(Gov. Code § 19572 m, Discourteous Treatment of Public/Other Employees)<br>(Gov. Code § 19572 t, Other Failure of Good Behavior) | **1** 2 3 |

EXHIBIT B-009

Operations Manual      DEPARTMENT OF CORRECTIONS AND REHABILITATION      Chapter 3

| D. CONDUCT or INEFFICIENCY (CONTINUED) | PENALTY |
|---|---|
| 27) Intentional failure to intervene or attempt to stop misconduct by another employee. | 4 5 6 7 8 9 |
| (Gov. Code § 19572 c, Inefficiency) | |
| (Gov. Code § 19572 d, Inexcusable Neglect of Duty) | |
| (Gov. Code § 19572 e, Insubordination) | |
| (Gov. Code § 19572 f, Dishonesty) | |
| (Gov. Code § 19572 o, Willful disobedience) | |
| (Gov. Code § 19572 t, Other Failure of Good Behavior) | |
| 28) Felony criminal conviction. | 9 |
| (Gov. Code § 19572 k, Conviction of a Felony or a Misdemeanor Involving Moral Turpitude) | |
| (Gov. Code § 19572 t, Other Failure of Good Behavior) | |

| E. INTEGRITY | PENALTY |
|---|---|
| 1) Petty theft. | 3 - 6 |
| (Gov. Code § 19572 f, Dishonesty) | Penalty shall be |
| (Gov. Code § 19572 k, Conviction of a Felony or a Misdemeanor Involving Moral Turpitude) | relative to value and |
| (Gov. Code § 19572 p, Misuse of State Property) | circumstances. |
| (Gov. Code § 19572 t, Other Failure of Good Behavior) | |
| 2) Grand theft. | 7 - 9 |
| (Gov. Code § 19572 f, Dishonesty) | Penalty shall be |
| (Gov. Code § 19572 k, Conviction of a Felony or a Misdemeanor Involving Moral Turpitude) | relative to value and |
| (Gov. Code § 19572 p, Misuse of State Property) | circumstances. |
| (Gov. Code § 19572 t, Other Failure of Good Behavior) | |
| 3) Making false or intentionally misleading statements to a supervisor. | 4 5 6 7 8 9 |
| (Gov. Code § 19572 e, Insubordination) | |
| (Gov. Code § 19572 f, Dishonesty) | |
| (Gov. Code § 19572 t, Other Failure of Good Behavior) | |
| 4) Making false or intentionally misleading statements to a public safety officer on or off duty. | 4 5 6 7 8 9 |
| (Gov. Code § 19572 e, Insubordination) | |
| (Gov. Code § 19572 f, Dishonesty) | |
| (Gov. Code § 19572 t, Other Failure of Good Behavior) | |
| 5) Any form of cheating on a civil service examination, including but not limited to unauthorized possession, use, or distribution of examination material or participating in an examination for another person. | 6 7 8 9 |
| (Gov. Code § 19572 a, Fraud in Securing Appointment) | |
| (Gov. Code § 19572 f, Dishonesty) | |
| (Gov. Code § 19572 l, Immorality) | |
| (Gov. Code § 19572 t, Other Failure of Good Behavior) | |
| 6) Falsification of time records or financial record for fraudulent purposes. | 6 7 8 9 |
| (Gov. Code § 19572 f, Dishonesty) | |
| (Gov. Code § 19572 t, Other Failure of Good Behavior) | |
| 7) Falsification or making intentionally misleading statements in official reports or records. | 6 7 8 9 |
| (Gov. Code § 19572 f, Dishonesty) | |
| (Gov. Code § 19572 t, Other Failure of Good Behavior) | |
| 8) Falsification of application or omission of information for employment or promotion when it materially affects acceptance or rejection for employment or promotion. | 6 7 8 9 |
| (Gov. Code § 19572 a, Fraud in Securing Appointment) | |
| (Gov. Code § 19572 f, Dishonesty) | |
| (Gov. Code § 19572 t, Other Failure of Good Behavior) | |
| 9) Falsification, alteration, or planting of evidence. | 6 7 8 9 |
| (Gov. Code § 19572 f, Dishonesty) | |
| (Gov. Code § 19572 t, Other Failure of Good Behavior) | |
| 10) False testimony under oath.    *"9" MEANS DISMISSAL | 9 |
| (Gov. Code § 19572 d, Inexcusable Neglect of Duty) | |
| (Gov. Code § 19572 f, Dishonesty) | |
| (Gov. Code § 19572 t, Other Failure of Good Behavior) | |

| F. FAILURE TO COMPLY | PENALTY |
|---|---|
| 1) Failure to report employment outside the Department. | 1 2 3 |
| (Gov. Code § 19572 r, Violation of Gov. Code § 19990) | |
| 2) Failure to attend required training. | 1 2 3 |
| (Gov. Code § 19572 e, Insubordination) | |
| (Gov. Code § 19572 o, Willful disobedience) | |

EXHIBIT B-010

(3) Notwithstanding subdivision (b) of Section 11349.6 of the Government Code, the adoption, amendment, or repeal of a regulation pursuant to paragraph (2) shall be reviewed by the Office of Administrative Law within 20 calendar days after its submission. In conducting its review, the Office of Administrative Law shall accept and consider public comments for the first 10 calendar days of the review period. Copies of any comments received by the Office of Administrative Law shall be provided to the department.

(4) Regulations adopted pursuant to paragraph (2) of subdivision (a) are not subject to the requirements of paragraph (2) of subdivision (a) of Section 11346.1 of the Government Code.

(b) It is the intent of the Legislature, in authorizing these deviations in this section from the requirements and procedures of Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code, to authorize the department to expedite the exercise of its power to implement regulations as its unique operational circumstances require.

*(Amended by Stats. 2006, Ch. 713, Sec. 7. Effective January 1, 2007.)*

**5058.4.** (a) The director shall provide for the development and implementation of a disciplinary matrix with offenses and associated punishments applicable to all department employees, in order to ensure notice and consistency statewide. The disciplinary matrix shall take into account aggravating and mitigating factors for establishing a just and proper penalty for the charged misconduct, as required by the California Supreme Court in Skelly v. State Personnel Board (1975) 15 Cal.3d 194. The presence of aggravating or mitigating factors may result in the imposition of a greater or a lesser penalty than might otherwise be mandated by the disciplinary matrix.

(b) The director shall adopt a code of conduct for all employees of the department.

(c) The director shall ensure that employees who have reported improper governmental activities and who request services from the department are informed of the services available to them.

(d) The department shall post the code of conduct in locations where employee notices are maintained. On July 1, 2005, and annually thereafter, the department shall send by electronic mail to its employees who have authorized access to electronic mail, the following:

(1) Information regarding the code of conduct.

(2) The duty to report misconduct.

(3) How to report misconduct.

(4) The duty to fully cooperate during investigations.

(5) Assurances against retaliation.

*(Added by Stats. 2004, Ch. 738, Sec. 2. Effective January 1, 2005.)*

**5058.5.** In addition to the services rendered by physicians and surgeons, including psychiatrists, or by psychologists, pursuant to Sections 5068 and 5079, physicians and surgeons, including psychiatrists and psychologists, employed by, or under contract to provide mental health services to, the Department of Corrections may also provide the following medically or psychologically necessary services: prescreening of mental disorders; determination of the mental competency of inmates to participate in classification hearings; evaluation of parolees during temporary detention; determining whether mental health treatment should be a condition of parole; and such other services as may be required which are consistent with their licensure.

*(Added by Stats. 1984, Ch. 1123, Sec. 2.)*

**5058.6.** The Director of the Department of Corrections shall have the authority of a head of a department set forth in subdivision (e) of Section 11181 of the Government Code to issue subpoenas as provided in Article 2 (commencing with Section 11180) of Chapter 2 of Division 3 of Title 2 of the Government Code. The department shall adopt regulations on the policies and guidelines for the issuance of subpoenas.

*(Added by renumbering Section 5058.5 (as added by Stats. 1992, Ch. 695) by Stats. 2001, Ch. 854, Sec. 53. Effective January 1, 2002.)*

**5058.7.** (a) The department shall approve an attorney's request to have a confidential call with the inmate that they represent. The approved confidential call shall be at least 30 minutes once per month, per inmate, per case, unless the inmate or attorney requests less time.

(b) For purposes of this section, "confidential call" means a telephone call between an inmate and their attorney that both the inmate and attorney intend to be private.

*(Added by Stats. 2020, Ch. 333, Sec. 1. (AB 3043) Effective January 1, 2021.)*

EXHIBIT 8-011

OFFICE OF INTERNAL AFFAIRS - ALLEGATION INVESTIGATION UNIT (AIU)
**INVESTIGATION ASSIGNMENT INDEX (IAI)**
(01/22)

| INVESTIGATION ASSIGNMENT INDEX<br><br>Page 1 of 2 | Sergeant, Lieutenant or Special Agent |
| --- | --- |
| **Use of Force** | |
| (1) Failure to report own or witnessed use of force | Lieutenant |
| (2) Excessive or unnecessary use of force | Lieutenant |
| (3) Improper use of restraints | Lieutenant |
| (4) Misuse, non-use, or careless handling of duty weapon(s) | Lieutenant |
| (5) Inappropriate display of duty weapons | Lieutenant |
| **Staff Sexual Misconduct** | |
| (1) Sexual misconduct with an incarcerated person or parolee | Lieutenant |
| (2) Sexual violence toward an incarcerated person or parolee | Special Agent |
| (3) Sexual harassment toward an incarcerated person or parolee | Lieutenant |
| **Dishonesty** | |
| (1) Destruction, fabrication, falsification, alteration or planting of evidence, including failure to comply with body worn camera activation requirements | Lieutenant |
| (2) Perjury, material misrepresentation, falsification, or intentionally misleading statements in official law enforcement reports or records; including rules violation reports once the disciplinary process is complete or 60 days after the initial copy of the rule violation report is issued to the incarcerated person, whichever occurs first. | Lieutenant |
| (3) Making false or intentionally misleading statements to a supervisor | Lieutenant |
| **Discrimination/Harassment** | |
| (1) Making insults to an incarcerated person or parolee pertaining to race, color, national origin, ancestry, religion, marital status, age, disability, medical or mental health condition, pregnancy, veteran status, or political affiliation | Sergeant |
| (2) Harassing an incarcerated person or parolee based upon race, color, national origin, ancestry, religion, marital status, age, disability, medical or mental health condition, pregnancy, veteran status, or political affiliation | Sergeant |
| (3) Discriminating against an incarcerated person or parolee pertaining to race, color, national origin, ancestry, religion, marital status, age, disability, medical or mental health condition, pregnancy, veteran status, or political affiliation | Sergeant |
| (4) Repeated misuse of specified pronouns or honorifics | Lieutenant |
| **Retaliation** | |
| (1) Retaliation against an incarcerated person or parolee due to reporting staff misconduct | Sergeant |
| (2) Retaliation against an incarcerated person or parolee due to use of the Administrative Remedies (Grievance and Appeal) process | Sergeant |
| (3) Retaliation against an incarcerated person or parolee due to participation in a lawsuit. | Sergeant |
| (4) Retaliation against an incarcerated person or parolee due to a request for a disability accommodation | Sergeant |

EXHIBIT B-012

OFFICE OF INTERNAL AFFAIRS - ALLEGATION INVESTIGATION UNIT (AIU)
**INVESTIGATION ASSIGNMENT INDEX (IAI)**
(01/22)

| INVESTIGATION ASSIGNMENT INDEX<br><br>Page 2 of 2 | Sergeant, Lieutenant or Special Agent |
|---|---|
| **Code of Silence** | |
| (1) Any involvement in a coordinated effort with other employees, incarcerated persons or parolees to prohibit the reporting of misconduct | Lieutenant |
| (2) Any independent act(s) which prevents or interferes with the reporting of misconduct | Lieutenant |
| (3) Intimidating, dissuading, or threatening witnesses | Lieutenant |
| (4) Failure to report misconduct by another employee | Lieutenant |
| **Integrity** | |
| (1) Creating an opportunity or motive for an incarcerated person or parolee to harm an incarcerated person or parolee, staff, or self (i.e. suicide) | Lieutenant |
| (2) Failure to intervene or attempt to stop misconduct by another employee. | Sergeant |
| (3) Actions or conduct causing significant risk to institutional or public safety/security | Lieutenant |
| (4) Improper access, disclosure or transmittal of confidential information | Lieutenant |
| **Other Misconduct** | |
| (1) Dangerous or negligent or reckless driving or operating machinery on duty | Sergeant |
| (2) Endangering self, fellow employees, incarcerated persons, parolees or the public by violation of Departmental training, laws, policies, directives or ordinances | Sergeant |
| (3) Misconduct resulting in significant injury or death of an incarcerated person or parolee | Special Agent |
| (4) Threats to, intimidation of or assault of an incarcerated person or parolee | Sergeant |
| (5) Over-familiarity with an incarcerated person or parolee pursuant to section 3400 | Sergeant |
| (6) Use of position to solicit gratuities or favors from an incarcerated person or parolee | Sergeant |
| (7) Bringing contraband into a security area for an incarcerated person | Lieutenant |

# California
## LEGISLATIVE INFORMATION

| Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites |

Code: [Select Code ▾]   Section: 1 or 2 or 1001   [Search]   

Up^    << Previous    Next >>    cross-reference chaptered bills    PDF | Add To My Favorites

Search Phrase:    [Highlight]

**PENAL CODE - PEN**

    **PART 1. OF CRIMES AND PUNISHMENTS [25 - 680.4]**  *( Part 1 enacted 1872. )*

        **TITLE 2. OF PARTIES TO CRIME [30 - 33]**  *( Title 2 enacted 1872. )*

**32.** Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony.

*(Amended by Stats. 1935, Ch. 436.)*

EXHIBIT B-014

CDCR ZERO TOLERANCE REGARDING THE CODE OF SILENCE

## California Department of Corrections and Rehabilitation
### *Zero Tolerance Regarding the "CODE OF SILENCE"*

The California Department of Corrections and Rehabilitation (CDCR) is only as strong as the values held by each of its employees, sworn and non-sworn. How we conduct ourselves inside our institutions and in the Central Office is a reflection of those values.

The "Code of Silence" operates to conceal wrongdoing. One employee, operating alone, can foster a Code of Silence. The Code of Silence also arises because of a conspiracy among staff to fail to report violations of policy, or to retaliate against those employees who report wrongdoing. Fostering the Code of Silence includes the failure to act when there is an ethical and professional obligation to do so.

Every time a correctional employee decides not to report wrongdoing, he or she harms our Department and each one of us by violating the public's trust. As members of law enforcement, all Correctional Officers must remain beyond reproach. The public's trust in this Department is also violated by retaliating against, ostracizing, or in any way undermining those employees who report wrongdoing and/or cooperate during investigations. There is no excuse for fostering a Code of Silence.

Your hard fought efforts to protect the public deserve recognition and the public's trust must be maintained while we take steps to ensure the Department exemplifies integrity and instills pride. Part of this effort is the immediate implementation of a zero tolerance policy concerning the Code of Silence. We will not tolerate any form of silence as it pertains to misconduct, unethical, or illegal behavior. We also will not tolerate any form of reprisal against employees who report misconduct or unethical behavior, including their stigmatization or isolation.

Each employee is responsible for reporting conduct that violates Department policy. Each supervisor and manager is responsible for creating an environment conducive to these goals. Supervisors are responsible for acquiring information and immediately conveying it to managers. Managers are responsible for taking all appropriate steps upon receipt of such information, including initiating investigations and promptly disciplining all employees who violate Department policy.

Any employee, regardless of rank, sworn or non-sworn, who fails to report violations of policy or who acts in a manner that fosters the Code of Silence, shall be subject to discipline up to and including termination.

EXHIBIT B-015

Revised 9/12

EXHIBIT C

CCR. TIT. 15 § 3084.7

GRIEVANCE LOG No. 277062

7 PAGES

TITLE 15                    DEPARTMENT OF CORRECTIONS AND REHABILITATION                    §3084.7

3. Amendment of subsections (b)(1)–(5), repealer and new subsection (b)(6)(D), amendment of subsections (b)(7) and (c), and repealer of subsections (c)(1) and (c)(2) filed 12-23-96 as an emergency; operative 12-23-96 (Register 96, No. 52). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 6-2-97, or emergency language will be repealed by operation of law on the following day.
4. Amendment of subsections (b)(1)–(5), repealer and new subsection (b)(6)(D), amendment of subsections (b)(7) and (c), and repealer of subsection (c)(1) and (c)(2) refiled 5-29-97 as an emergency; operative 6-2-97 (Register 97, No. 22). A Certificate of Compliance must be transmitted to OAL by 9-30-97 or emergency language will be repealed by operation of law on the following day.
5. Editorial correction of History 4 (Register 97, No. 24).
6. Certificate of Compliance as to 5-29-97 order, including amendment, transmitted to OAL 9-25-97 and filed 11-7-97 (Register 97, No. 45).
7. Repealer and new section heading and section and amendment of Note filed 12-13-2010 as an emergency; operative 1-28-2011 (Register 2010, No. 51). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 7-7-2011 or emergency language will be repealed by operation of law on the following day.
8. Certificate of Compliance as to 12-13-2010 order transmitted to OAL 6-15-2011 and filed 7-28-2011 (Register 2011, No. 30).
9. Amendment of subsection (c)(5) and Note filed 10-20-2016; operative 10-20-2016 pursuant to Government Code section 11343.4(b)(3) (Register 2016, No. 43).

**3084.7. Levels of Appeal Review and Disposition.**

(a) All appeals shall be initially submitted and screened at the first level unless the first level is exempted. The appeals coordinator may bypass the first level for appeal of:
(1) A policy, procedure or regulation implemented by the department.
(2) A policy or procedure implemented by the institution head.
(3) An issue that cannot be resolved at the division head level such as Associate Warden, Associate Regional Parole Administrator, CALPIA manager or equivalent.
(4) Serious disciplinary infractions.
(b) The second level is for review of appeals denied or not otherwise resolved to the appellant's satisfaction at the first level, or for which the first level is otherwise waived by these regulations. The second level shall be completed prior to the appellant filing at the third level as described in subsection 3084.7(c).
(1) A second level of review shall constitute the department's final action on appeals of disciplinary actions classified as "administrative" as described in section 3314, or of minor disciplinary infractions documented on the Counseling Only Rules Violation Report, pursuant to section 3312(a)(2), and shall exhaust administrative remedy on these matters.
(2) Movies/videos that have been given a rating of other than "G", "PG", or "PG-13" by the Motion Picture Association of America are not approved for either general inmate viewing pursuant to section 3220.4 or for viewing within the classroom, and will not be accepted for appeal at any level. The first level shall be waived for appeals related to the selection or exclusion of a "G", "PG", or "PG-13" rated or non-rated movie/video for viewing and the second level response shall constitute the department's final response on appeals of this nature.
(c) The third level is for review of appeals not resolved at the second level, or:
(1) When the inmate or parolee appeals alleged third level staff misconduct or appeals a third level cancellation decision or action.
(2) In the event of involuntary psychiatric transfers as provided in subsection 3084.9(b).
(d) Level of staff member conducting review.

(1) Appeal responses shall not be reviewed and approved by a staff person who:
(A) Participated in the event or decision being appealed. This does not preclude the involvement of staff who may have participated in the event or decision being appealed, so long as their involvement with the appeal response is necessary in order to determine the facts or to provide administrative remedy, and the staff person is not the reviewing authority and/or their involvement in the process will not compromise the integrity or outcome of the process.
(B) Is of a lower administrative rank than any participating staff. This does not preclude the use of staff, at a lower level than the staff whose actions or decisions are being appealed, to research the appeal issue.
(C) Participated in the review of a lower level appeal refiled at a higher level.
(2) Second level review shall be conducted by the hiring authority or designee at a level no lower than Chief Deputy Warden, Deputy Regional Parole Administrator, or the equivalent.
(3) The third level review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies; however, this does not preclude amending a finding previously made at the third level.
(e) At least one face-to-face interview shall be conducted with the appellant at the first level of review, or the second level if the first level of review is bypassed, unless:
(1) The appellant waives the interview by initialing the appropriate box on the CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal. An appellant's waiver of the interview shall not preclude staff from conducting an interview in the event of staff determination that an interview is necessary.
(2) The reviewer has decided to grant the appeal in its entirety.
(3) The appeal is a request for a Computation Review Hearing, in which case the initial interview shall occur at the second level of review.
(4) The appellant is not present at the institution or parole region where the appeal was filed.
(A) In such case, a telephone interview with the appellant shall meet the requirement of a personal interview. If the appeal concerns a disciplinary action, the telephone interview may be waived if the appeals coordinator determines an interview would not provide additional facts.
(B) The response must note that the interview was conducted by telephone, explain the extraordinary circumstances that required it, and state why a face-to-face interview was not possible under the circumstances.
(C) If the appellant is not available for a telephone interview, the reviewer may request that a suitable employee in the jurisdiction where the appellant is located complete the interview and provide a report.
(f) An interview may be conducted at any subsequent level of review when staff determine that the issue under appeal requires further clarification.
(g) When a group or multiple appeal is received, one or more of the participating inmates/parolees shall be interviewed to clarify the issue(s).
(h) At the first and second level of review, the original appeal, within the time limits provided in section 3084.8, shall be returned to the appellant with a written response to the appeal issue providing the reason(s) for each decision. Each response shall accurately describe the matter under appeal and fully address the

EXHIBIT C-016

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | 277062 | | PELICAN BAY STATE PRISON |
| | 9/6/2022 | | JUL 07 2022 |
| | *FOR STAFF USE ONLY* | | |

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available.  See California Code of Regulations (CCR), Title 15, Section 3084.1.  You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that led to the filing of this appeal.  If additional space is needed, only one CDCR Form 602-A will be accepted.  Refer to CCR 3084 for further guidance with the appeal process.  No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.          WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): VERDUZCO, D | CDC Number: T-45537 | Unit/Cell Number: B6A 126 | Assignment: |
|---|---|---|---|

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.):

CRIMINAL CONSPIRACY TO RETALITATE AGAINST APPEALLANT AND DEPRIVE HIM HIS CONSTITUTIONAL RIGHTS (PREA)

**A.** Explain your issue (If you need more space, use Section A of the CDCR 602-A): STAFF MISCONDUCT IS ANY VIOLATION OF LAW OR (CDCR) POLICY. (CHCF) IS A CAMERA FACILITY, APPEALLANT WAS ISSUED GRIEVANCE DECISION FOR LOG # 242046 CDU 06/10/22. AS OF 06/10/22 I BECAME AWARE OF THE DECISION UNDER APPEAL. A CRIMINAL CONSPIRACY BY (PBSP) WARDEN'S J. ROBERTSON, R. BELL, (PBSP) (ISU) LIEUTENANTS R. BASSO, J. ANDERSON, (ISU) SGT. Z. BARNETTE, (PBSP) APPEALS

**B.** Action requested (If you need more space, use Section B of the CDCR 602-A): 1) TO PROCEED AS VICTIM JOHN DOE , CAL PEN. COD. § 2935 (a) ; GOV. COD. § 6254.   2) TO INVOKE ALL RIGHTS UNDER THE EQUAL PROTECTION CLAUSE OF THE 14TH AMEND. AND THE VICTIM BILL OF RIGHTS, CAL CONSTITUTION ART 1. §28 SEC. (b) TO HAVE MY ABUSER H. BUSH PROSECUTED AND TO BE NOTIFIED OF THE PROCESS TO PROSECUTE BUSH. FOR J. ROBERTSON, R. BELL, R. BASSO, J. ANDERSON, Z. BARNETTE,

Supporting Documents: Refer to CCR 3084.3.
☑ Yes, I have attached supporting documents.
List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):
1) APPEAL GRIEVANCE DATED 06/23/2022          2) LETTER DATED JUNE 10, 2022
3) DECL. DANIEL VERDUZCO, T-45537 W/ EXHIBITS A THRU Z

☐ No, I have not attached any supporting documents. Reason :_____

Inmate/Parolee Signature: _Daniel_____          Date Submitted: JUNE 30, 2022

☐ **By placing my initials in this box, I waive my right to receive an interview.**

**C. First Level - Staff Use Only**          Staff – Check One:  Is CDCR 602-A Attached?  ☐ Yes  ☐ No
This appeal has been:
☐ Bypassed at the First Level of Review.  Go to Section E.
☐ Rejected (See attached letter for instruction)  Date:_____  Date:_____  Date:_____  Date:_____
☐ Cancelled (See attached letter)  Date:_____
☐ Accepted at the First Level of Review.
   Assigned to:_____  Title:_____  Date Assigned:_____  Date Due:_____

First Level Responder:  Complete a First Level response.  Include Interviewer's name, title, interview date, location, and complete the section below.
          Date of Interview:_____          Interview Location:_____
Your appeal issue is:  ☐ Granted   ☐ Granted in Part   ☐ Denied   ☐ Other:_____
          See attached letter.  If dissatisfied with First Level response, complete Section D.

Interviewer:_____  Title:_____  Signature:_____  Date completed:_____
          (Print Name)
Reviewer:_____  Title:_____  Signature:_____
          (Print Name)
Date received by AC:_____

**EXHIBIT C-017**

| AC Use Only |
|---|
| Date mailed/delivered to appellant ___ / ___ / ___ |

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A   (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | | | |
| | *FOR STAFF USE ONLY* | | |

Attach this form to the CDCR 602, only if more space is needed.  Only one CDCR 602-A may be used.

Appeal is subject to rejection if one row of text per line is exceeded.   **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First): VERDUZCO, D | CDC Number: T-45537 | Unit/Cell Number: B6A 126 | Assignment: |
|---|---|---|---|

**A. Continuation of CDCR 602, Section A only (Explain your issue):** COORDINATOR'S K. ROYAL, M. RUSSELL, (PBSP)
PSYCHOLOGIST H. BUSH, AND (CHCF) (ISU) SGT. A. ALI. THESE INDIVIDUALS HAVE COMMITTED VARIOUS FELONIES, THE CRIMES
REMAIN ON GOING. THE FELONIES COMMITTED VIOLATE STATE AND FEDERAL STATUTES; CCR TIT. 15 § 3084 (9); § 3291 (a)(c)(e);
3401.5 (a)(2)(E)(4)(5)(b); CAL PEN. COD. § 4570; 5058.4; § 32; § 118.1(3); § 132; § 134; § 2639 (e); 289.6 (a)
(5)(d)(5)(e); 6065(c)(2. TIT. 28 C.F.R. § 115.76 (a); § 115.77 (a); BUS. PRO. COD. § 729. GOV. COD. § 19572 (f).
[DOM] 54040-12.3; § 54040-12.4.; ] CH.3. ART. 22 § 33030.19 (B)(3)(4)(5) § CH.3. § 31140-5.1. CCR. TIT. 15 §
3600.5 (a); 3034.7 (d)(1)(A). [DOM] CH.3 ART 22 § 33030.19 (E)(7). TIT. 18. U.S.C. § 1001 (a)(2)(1) (CRIMINAL
CONCEALMENT). THESES CRIMES CAN BE PROSECUTED ON DATE OF DISCOVERY. CAL PEN. COD. § 803 (c)(2); SEE ALSO,
PEOPLE Vs. ZAMORA, (1976) 18 C. 3A. 538 564 N. 26 134 CR.784. (PBSP) EMPLOYEES (W) WENDY REYNOLDS & K. LIMON
COMMITTED A FELONY EACH.  ALL THE CRIMES COMMITTED BY NAMED AND UNNAMED CDCR STAFF WAS DONE IN A COORDINATED
EFFORT TO RETALIATE AGAINST APPELLANT, DEPRIVE APPELLANT HIS 1ST, 8TH AND 14TH AMENDMENT RIGHTS DRIVE APPELLANT
HIS CAL CONSTITUTION RIGHT UNDER ART. 1, § 28. (SEE. (b) "VICTIM BILL OF RIGHTS", CONCEAL CRIMINAL SEXUAL ABUSE, AND
A CRIMINAL CONSPIRACY TO COVER IT UP.  R. BELL'S LATEST FELONY TO FURTHER THE CONSPIRACY WAS GRIEVANCE DECISION IN
LOG # 243046. ON (a) OCCASSION J. ROBERTSON CRIMINALLY FALSIFIED A (PREA) INVESTIGATION TO CONCEAL BUSH'S CRIMINAL
ACTS. I RECEIVED THE EVIDENCE ON 06/10/22. J. ROBERTSON CRIMINALLY FALSIFIED RECORDS TO CONCEAL HIS OWN CRIMINAL
ACTS. R. BELL HAS APPELLANTS APPEAL ROUTE TO R. BELL SO BELL CAN CONTROL DATA PROVIDED TO APPELLANT TO FURTHER THE
CONSPIRACY AND CONCEAL BELL'S OWN CRIME AND CRIMES BY THOSE IDENTIFIED HEREIN. ON 6/22/22 APPELLANT FILED AN
EMERGENCY APPEAL AND RECIEVED NO. LOG #. ON 6/24/22 AT 12:30 P.M. APPELLANT CALLED (CDCR) (OIA) AT (916)483-1594
THIS IS RECORDED, NO (OIA) INTERVIEW FOLLOWED. (CDCR) IS PROMOTING A CODE OF SILENCE TO VIOLATE MY FEDERAL RIGHTS.

Inmate/Parolee Signature: _(signature)_          Date Submitted: 06/30/22 THURS.

**B. Continuation of CDCR 602, Section B only (Action requested):** A. ALI, K. ROYAL, M. RUSSELL, W. REYNOLDS, AND K. LIMON AND NONNAMED STAFF TO
BE PROSECUTED FOR THEIR CRIMES TO VIOLATE MY STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO CONCEAL CRIMINAL SEXUAL ABUSE.  3) A COMPLETE LEGAL CAL PEN.
COD. § 2639 CRIMINAL SEXUAL ABUSE INVESTIGATION AND INVESTIGATION INTO THE CRIMINAL CONSPIRACY TO COVER IT UP, THE TWO PRIOR § 2639 CRIMINAL
SEXUAL ABUSE INVESTIGATIONS WERE CRIMINALLY FALSIFIED TO CHILL MY FIRST AMENDMENT AND DENY ME EQUAL PROTECTION OF LAW.  4) REPORT ALL OF BUSH'S
CRIMES OF CRIMINAL SEXUAL ABUSE, CRIMINAL CORRESPONDENCE, CRIMINAL NEGLIGENT WITH INTENT TO CAUSE GREAT BODILY HARM TO LAW ENFORCEMENT
AND THE BOARD OF PSYCHOLOGY AS REQUIRED BY MANDATORY STATE AND FEDERAL STATUTES.  4) FOR ALL CRIMINAL ACTIVITY BY J. ROBERTSON, R. BELL,
J. ANDERSON, Z. BASNETTE, A. ALI, K. ROYAL, M. RUSSELL, W. REYNOLDS, AND K. LIMON TO BE REPORTED TO CRIMINAL AGENCIES IN
COMPLIANCE WITH CCR. TIT. 15 § 3291 (a)(f) ] [DOM] 31140.5 § 31140.5.1. CRIMINAL ACTIVITY HAS NO IMMUNITY PROTECTIONS, (CDCR) CANNOT
CONCEAL CRIMINAL ACTIVITY BY (CDCR) STAFF.   5) PLACEMENT INTO (CSP-COR) (PHU) FOR MY SAFTY, THIS IS TANTAMOUNT TO A WHISTLEBLOWER REPORT.
6) THE FIRST AMENDMENT RETALIATION AND DENIAL OF EQUAL PROTECTION OF LAW RESULTED IN ACTUAL PHYSICAL HARM. WHEN J. ROBERTSON AND Z. BASNETTE
CRIMINALLY FALSIFIED RECORD TO CLEAR H. BUSH, I WAS SO DEVASTATED THAT I CUT OFF MY FINGER, MAILED IT TO (OIG) ASKING FOR HELP, FIVE
MINUTES ON A COMPUTER WOULD HAVE UNCOVERED THIS MASS CRIMINAL CONSPIRACY.  6) NOTIFY FEDERAL PROSECUTERS, (J. RUSH IS COMPLICIT TOO).

Inmate/Parolee Signature: _(signature)_    **EXHIBIT C-018**    Date Submitted: 06/30/2022 THURSDAY.

WILLIAM PAUL BURANICH, DAG                                JUNE 10, 2022

455 GOLDEN GATE AVE, SUITE 11000                         ( PAGE 1 OF 2 )

SAN FRANCISCO, CALIFORNIA 94102

    RE: CASE No. 4:19-CV-01440-JSW


DEAR MR. BURANICH :


YOU HAVE A LEGAL OBLIGATION TO STRIKE THE PERJURED TESTIMONY OF R. BASSO AND M. RUSSELL. IT IS A FELONY TO MAKE FALSE STATEMENTS REGARDING A CRIMINAL SEXUAL MISCONDUCT INVESTIGATION, SEE CAL. PEN. COD. §115.1 (a) ; § 134 . WHETHER YOU STRIKE IT OR NOT THEIR CRIMINALLY FALSE STATEMENTS WILL BE USED TO SEEK THEIR PROSECUTION.


MR. BURANICH I DISCOVERED ON JUNE 10, 2022 THAT (PBSP) WARDEN J. ROBERTSON IS HIRING AUTHORITY DOE 1. ALL ALONG IT HAS BEEN (PBSP) WARDEN J. ROBERTSON WHOM CONSPIRED WITH R. BASSO IN 2017 TO COMMIT CRIMINAL FALSIFICATION OF RECORDS DURING A CRIMINAL SEXUAL MISCONDUCT INVESTIGATION TO OBSTRUCT JUSTICE AND CONCEAL BUSH'S CRIMINAL SEXUAL ABUSE AND VARIOUS CONSTITUTIONAL VIOLATIONS. I JUST DISCOVERED THIS TODAY AND AS OF TODAY I CAN UNEQUIVOCALLY PROVE A CRIMINAL CONSPIRACY ORCHESTRATED BY (PBSP) WARDEN J. ROBERTSON WHOM HAS BEEN THE CRIMINAL MASTERMIND SINCE 2017. R. BASSO AND J. ROBERTSON WILL NEED A CRIMINAL ATTORNEY SHORTLY ALONG WITH EVERY EMPLOYEE THAT COMMITTED FELONIES IN THE FURTHERANCE OF THE CRIMINAL CONSPIRACY. STATUTE OF LIMITATIONS ARE STAYED FOR CRIMINAL PROSECUTION UNTIL DATE OF DISCOVERY, CAL. PEN. COD. § 803 (a) (c) (2).


APPEAL LOG # (PBSP-O-19-01532 ) WAS AGAINST H. BUSH FOR SEXUALLY ABUSING ME , DENYING ME MENTAL HEALTH, AND INSTRUCTING ME TO CUT OFF MY FINGER, IT WAS ALSO AGAINST (PBSP) EMPLOYEES THAT BECAME AWARE OF IT AND DID NOTHING TO PROTECT ME i.e. R. BASSO AND (PBSP) WARDEN J. ROBERTSON. MR. BURANICH (PBSP) WARDEN J. ROBERTSON HAD PBSP-O-19-01532 ASSIGNED TO HIM AS THE HIRING AUTHORITY OVERSEEING THE CRIMINAL INVESTIGATION INTO THE CRIMINAL CONDUCT AND CONSTITUTIONAL VIOLATIONS BY H. BUSH, R. BASSO, AND J. ROBERTSON (HIMSELF ). J. ROBERTSON WAS OVERSEEING AN INVESTIGATION INTO HIS, BUSH'S, BASSO'S OWN CRIMINAL CONDUCT. THIS IS A BLATANT VIOLATION OF (CDCR) POLICY. MORE IMPORTANTLY, IT IS A BLATANT CRIMINAL CONSPIRACY. (PBSP) WARDEN J. ROBERTSON ACTED IN CONCERT WITH VARIOUS (PBSP) EMPLOYEES TO COMMIT FELONIES IN THE FURTHERANCE TO CONCEAL CRIMINAL ACTS BY BUSH, BASSO, AND HIMSELF.  (PBSP) WARDEN R. BELL AND APPEALS COORDINATOR K. ROYAL CRIMINALLY FALSIFIED SEC. E , SIDE 2 OF THE APPEAL RECORD. THEN, J. ROBERTSON AUTHORIZED THE MEMORANDUM SIGNED BY K. ROYAL ON NOV. 05. 2019. J. ROBERTSON CLEARED HIMSELF, DURING A CRIMINAL INVESTIGATION AGAINST HIMSELF, THAT WAS BEING OVERSEEN BY HIMSELF THAT HE ASSIGNED TO HIMSELF. HE CLEARED BASSO AND BUSH TOO. (ISU) Z. BASINETTE COMMITTE

EXHIBIT C-019

(PAGE 2 OF 2)                                              JUNE 10, 2022

FELONIES FOR J. ROBERTSON, TOO. THESE ARE UNDISPUTABLE FACTS. M. RUSSELL HAS IMMERSED HIMSELF IN THE CRIMINAL CONSPIRACY BY LYING FOR R. BASSO AND J. ROBERTSON. M. RUSSELL KNOWS I MENTIONED R. BASSO BY NAME ON JULY 10, 2019 AND REFERED TO J. ROBERTSON AS BASSO'S SUPERVISOR'S.

I JUST DISCOVERED THIS MASS CRIMINAL CONSPIRACY WAS ORCHESTRATED BY BY (PBSP) WARDEN J. ROBERTSON. IT IS ONLY AS OF TODAY THAT THE MASTERMIND WAS TRUELY REVEALED, I SUSPECTED THAT J. ROBERTSON WAS THE MASTERMIND BUT I HAD NO EVIDENCE UNTIL TODAY. I'M SURE YOU ALWAYS KNEW THAT HIRING AUTHORITY DOE I AND (PBSP) WARDEN J. ROBERTSON WERE ONE AND THE SAME. THE CRIMINAL CONSPIRACY TO CONCEAL RUSH'S, BASSO'S, AND ROBERTSON'S CRIMINAL REMAINS ONGOING. BUT, I'M GONNA DO WHATEVER IT TAKES SO THEY ARE PROSECUTED.

MR. BURANICH I'M NOT CONCERNED IF I DON'T PREVAIL AT SUMMARY JUDGEMENT, THE TRUTH ALWAYS COMES OUT. AS IS THE CASE WITH J. ROBERTSON. MY FAMILY HAS AGREED TO GET ME A LAWYER FOR THE 9TH CIR. APPEALLATE REVIEW DUE TO ALL THE CRIMINAL CONDUCT PERPETRATED BY YOU AND (CDCR) IN THIS CASE. I WANT THIS CASE SET FOR TRIAL. I WANT H. RUSH, R. BASSO, J. ROBERTSON, R. BELL, K. ROYAL, Z. RASNETTE, J. ANDERSON, AND M. RUSSELL PROSECUTED FOR THEIR CRIMINAL AC CONDUCT.

                                              RESPECTFULLY,

ENCLOSURE (S)                                 DANIEL VERDUZCO, T-45537
AUTHENTIC COPY OF CDCR 602 SIDE 2 (PBSP-0-19-01532)    CHCF B6A 126
MEMORANDUM DATE NOV. 05, 2019 (PBSP-0-19-01532)       P.O. BOX 32110
GA-0022 FORM DATED JAN. 7, 2022               STOCKTON, CALIFORNIA 95213

EXHIBIT C-020





CALIFORNIA DEPARTMENT of
Corrections and Rehabilitation

# OFFICE OF GRIEVANCES DECISION

**Offender Name:**  VERDUZCO, DANIEL
**CDC#:**  T45537
**Current Location:**  CHCF-Facility B

**Date:**  07/14/2022

**Current Area/Bed:**  B 306A1 - 126001L

**Log #:**  000000277062

---

**Claim #:  001**

**Received at Institution/Parole Region:**  Pelican Bay State Prison
**Submitted to Facility/Parole District:**  Pelican Bay State Prison
**Housing Area/Parole Unit:**

**Category:**  Offender Services                          **Sub-Category:**   Other Services - NOS

The California Department of Corrections and Rehabilitation received your grievance on 07/07/2022 which you submitted on 06/30/2022. This claim has not been assigned for review or response because it is being handled as specified below.

Claim # 001:
Your claim concerning Offender Services;Other Services - NOS is rejected for the reason or reasons indicated below:

Your claim concerns an anticipated policy, decision, action, condition or omission by the Department or departmental staff.  This generally means the decision or action is not final or has not happened yet. Once the decision or action is final or has taken place, you may file a new grievance if you are still dissatisfied.

If you are dissatisfied with this response you may appeal this decision by mailing the CDCR Form 602-2 included in this response to the California Department of Corrections and Rehabilitation, Office of Appeals. Do not resubmit this claim to the Office of Grievances.

**Decision: Rejected**

---

**Claim #:  002**

**Received at Institution/Parole Region:**  Pelican Bay State Prison
**Submitted to Facility/Parole District:**  Pelican Bay State Prison
**Housing Area/Parole Unit:**
**Category:**  Offender Services                          **Sub-Category:**   Other Services - NOS

The California Department of Corrections and Rehabilitation received your grievance on 07/07/2022 which you submitted on 06/30/2022. This claim has not been assigned for review or response because it is being handled as specified below.

Claim # 002:
Your claim concerning Offender Services;Other Services - NOS is rejected for the reason or reasons indicated below:

Your claim disputes or contravenes the regulatory framework for the grievance and appeal process itself which is not permitted under the California Code of Regulations, title 15.

EXHIBIT C-021

If you are dissatisfied with this response you may appeal this decision by mailing the CDCR Form 602-2 included in this response to the California Department of Corrections and Rehabilitation, Office of Appeals. Do not resubmit this claim to the Office of Grievances.

**Decision: Rejected**

EXHIBIT C-022

# PROOF OF SERVICE BY MAIL
## [CCP §§ 1013(a), 2015.5]

STATE OF CALIFORNIA, COUNTY OF __SAN JOAQUIN__

    I am a citizen of the County of __SAN JOAQUIN__, State of California. I am a citizen of the United States of America. I am over the age of eighteen (18) and not a party to this action. I am a resident of the County of San Joaquin, CDCR#__T-45537__.

    My address is: __DANIEL VERDUZCO, T-45537__

                California Health Care Facility

                __P.O. BOX 32110__

                Stockton, CA 95213

    On __SEP.__ __25__, 2022, I served via United States Mail a copy of the following document(s): __NOTICE OF MOT. AND MOT. REQUESTING A RULING ON PENDING MOT.'S FOR CRIMINAL ACTIVITY DIRECTLY RELATED TO THE FACTS/CIRCUMSTANCES AT ISSUE IN THIS CASE. NO RULINGS HAS RESULTED IN CONTINUED CRIMINAL AND CONSTITUTIONAL VIOLATION'S .__

    The above-noted legal document(s) was placed in a sealed envelope, with postage thereon fully prepaid, addressed to the person at the address indicated below pursuant to California Code of Civil Procedure Section 1013. I placed the envelope or package in a mailbox or other like facility addressed to:

__OFFICE OF THE CLERK, U.S. DISTRICT CT.__  __WILLIAM P. BURANICH, DAG__  __ATTORNEY AT LAW__  __HANNAH E. BUSH__
__1301 CLAY STREET, SITE 400S__  __455 GOLDEN GATE AVE., SITE 11000__  __ANDREW K. JACOBSON__  __290 ARDMOOR DRIVE__
__OAKLAND, CA. 94612__  __SAN FRANCISCO, CA. 94102__  __1939 HARRISON ST. SITE 929__  __CLARKSVILLE, TN. 37043__
                                            __OAKLAND, CA. 94612__

    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. This document was executed on __SEP. 25ᵗʰ__, 2022 in San Joaquin County, California.

__DANIEL VERDUZCO__
Type or Print Name

Signature